T.C. Memo. 1996-243


UNITED STATES TAX COURT


PAUL L. TREGRE, JR., Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5464-94.                    Filed May 23, 1996.


<u>William C. Gambel</u> and <u>Julia M. Pearce</u>, for petitioner.

<u>Kathleen O. Lier</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WRIGHT, <u>Judge</u>:  Respondent determined deficiencies in and
additions to petitioner's Federal income taxes as follows:[1]

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years at issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

| Year | Deficiency | Additions to Tax Sec. 6653(b) | Sec. 6653(b)(1) | Sec. 6653(b)(2) |
|------|-----------|------------|-----------------|-----------------|
| 1980 | $3,360 | $1,680 | -- | -- |
| 1981 | 3,431 | 1,716 | -- | -- |
| 1982 | 5,209 | -- | $2,605 | [1] |
| 1983 | 4,823 | -- | 2,412 | [2] |

[1]50 percent of the interest due on $5,209.
[2]50 percent of the interest due on $4,823.

The issues for decision are:

(1) Whether petitioner is entitled to deduct various Schedule C expenses for each taxable year at issue.  We hold that he is not.

(2) Whether petitioner is entitled to an investment tax credit for taxable year 1982.  We hold that he is not.

(3) Whether petitioner is liable for the addition to tax under section 6653(b), for taxable years 1980 and 1981, and section 6653(b)(1) and (2), for taxable years 1982 and 1983.  We hold that he is.

(4) Whether the period of limitations has expired for assessment and collection of the deficiencies in and additions to tax for each taxable year at issue.  We hold that it has not.

(5) Whether the equitable doctrine of laches bars assessment and collection of the deficiencies in and additions to tax for each taxable year at issue.  We hold that it does not.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein. At the time the petition was filed in this case, petitioner resided in Metairie, Louisiana.

Petitioner and his spouse[2] filed a joint Federal income tax return for taxable year 1980 on April 16, 1981. The couple timely filed joint Federal income tax returns for taxable years 1981, 1982, and 1983.

In 1957, petitioner began working for Avondale Shipyards, Inc. (ASI). During the early 1970's, petitioner was the assistant superintendent of ASI's paint department (occasionally the paint department). Petitioner became the superintendent of the paint department in 1975 and remained in that position throughout the years at issue.

Besco Exporting Corporation (Besco) was a manufacturer of industrial chemicals. During the years at issue, Besco was owned by James Tubre (Tubre) and Seligman Kahn (Kahn). In promoting its products, Besco routinely sought to gain "in the yard" status with its customers. "In the yard" status meant physical and ongoing access to customer job sites. This practice enabled Besco to make first-hand field observations of the particular

---

[2]Petitioner's spouse is not a party to this proceeding.

needs of its customers.  It also enabled Besco to be more responsive to its customers' demands.  Perhaps the most significant aspect of possessing "in the yard" status, however, was the influence that could be had on the purchasing agents of Besco's customers.

In 1964, Besco began supplying ASI with various chemical products.  Besco attained "in the yard" status at ASI shortly thereafter.  Besco's business relationship with ASI developed over the ensuing years, and sales to ASI constituted between 30 and 40 percent of Besco's total business during the years at issue.  Many of ASI's departments purchased products from Besco, including the paint department.

At sometime during the early 1970's, while petitioner was assistant superintendent of the paint department, petitioner approached Tubre and inquired about the possibility of selling Besco products to customers other than ASI.  Tubre approved of this idea and verbally authorized petitioner to represent Besco and market its products.  Tubre's consent to petitioner's request was motivated by Tubre's desire to expand Besco.

Petitioner was unsuccessful in generating orders for Besco's products from sources outside ASI, and his efforts eventually ceased.  Subsequently, petitioner approached Tubre and requested that Besco pay petitioner an unspecified amount for petitioner's involvement in causing ASI's paint department to purchase

products from Besco.  In response to this request, Tubre informed petitioner that it was necessary that he discuss the matter with Kahn and George Steiner (Steiner).[3]  Besco eventually sought the advice of its accountant, Edmund Lee (Lee).  Tubre claims that Lee informed him that such an arrangement was acceptable but that it was imperative to make it appear that the payments were not based upon Besco's sales to ASI.  Tubre further claims that Lee instructed him to pay petitioner by check, characterize each payment as a commission, and issue a Form 1099 Misc. with respect to each taxable year in which any payment is made.

Following the consultation with Lee, Besco began making payments to petitioner based on Besco's sales to ASI's paint department.  Each payment was in the form of a check and was characterized by Besco as a commission.  The frequency, pattern, and amount of such payments are not determinable from the record; however, during the 6-year period ending with 1979, Besco paid petitioner the following amounts in connection with Besco's sales to the paint department:

| Year | Amount |
|------|--------|
| 1974 | $10,918 |
| 1975 | 14,955 |

---

[3]Prior to December 1974, Besco was owned equally by Steiner, Tubre, and Kahn.  After Steiner retired in December 1974, Tubre and Kahn became the sole owners of Besco.

1976        14,030

1977        19,152

1978        18,300

1979        18,362

Similarly, during the years at issue, Besco paid petitioner the
following amounts in connection with its sales to the paint
department:

| Year | Amount |
|------|--------|
| 1980 | $21,315 |
| 1981 | 25,377 |
| 1982 | 19,274 |
| 1983 | 17,642 |

Besco reported all payments to the Internal Revenue Service
(IRS) on Forms 1099 Misc.  Petitioner, in turn, reported receipt
of the above amounts on his returns for each respective taxable
year.

In 1974, Tubre had a meeting with an ASI vice president
named Clark.  During the course of that meeting, Clark instructed
Tubre to cease paying ASI employees for their involvement in "in
the yard" activities.  Tubre informed petitioner, Kahn, and
Steiner of his conversation with Clark.  He also told petitioner
that Besco intended to comply with Clark's directive.  The
payments, however, continued despite Tubre's reservations.

Sometime during or before 1984, the IRS initiated an investigation of ASI. As part of that investigation, an IRS special agent (Balash) examined petitioner's returns for the taxable years at issue. Balash met with Tubre on at least two occasions during the course of her investigation. On one occasion, Tubre informed Balash that petitioner "serviced" various accounts for Besco and that Besco's payments to petitioner resulted from such service.[4] This information was false, and Tubre knew of its falsity at the time he told it to Balash.

On December 20, 1984, Balash met with petitioner. During the course of that meeting, petitioner represented to Balash that the income he received from Besco was in exchange for services he had provided Besco in the form of soliciting business or providing leads. In making such representations, petitioner referred to several of Besco's customers and indicated that he had made contact with certain individuals within those organizations in his efforts to market Besco's products.

As noted earlier, petitioner reported the income he received from Besco on his tax return for each taxable year at issue.

---

[4]It is not clear from the record what activities were involved in the alleged "servicing" by petitioner. The arguments advanced by both parties, however, suggest that such activities entailed providing leads to and soliciting business on behalf of Besco.

That income is reflected on a Schedule C attached to petitioner's returns.  The Schedule C's attached to petitioner's returns for 1980, 1981, and 1982 characterize the "main business activity" which gave rise to the income from Besco as "commissions".  The Schedule C attached to petitioner's return for 1983 characterizes the "main business activity" which gave rise to the income from Besco as "industrial sales".  On each Schedule C, petitioner offset the income received from Besco with various expenses that he allegedly incurred in connection with earning such income.  The following table lists petitioner's alleged Schedule C expenses for each taxable year at issue:

| Description | 1980 | 1981 | 1982 | 1983 |
|---|---|---|---|---|
| Depreciation | $71.70 | $71.70 | $4,051.45 | $72.00 |
| Dues and publications | 36.00 | 48.00 | -- | -- |
| Office supplies | 106.58 | -- | -- | -- |
| Office supplies and postage | -- | 147.23 | 113.20 | -- |
| Office expenses | -- | -- | -- | 488.00 |
| Telephone | 106.94 | -- | -- | -- |
| Travel and entertainment | 1,412.00 | 1,781.12 | 1,549.30 | 500.00 |
| Utilities | 285.78 | -- | -- | -- |
| Utilities and telephone | -- | 480.56 | 659.73 | -- |
| Automobile expenses | 4,753.16 | 3,295.33 | -- | -- |

| Car and truck expenses | -- | -- | 1,781.60 | 9,901.00 |
|---|---|---|---|---|
| Insurance | -- | -- | 800.00 | -- |
| Total | 6,772.16 | 5,823.94 | 8,955.28 | 10,961.00 |

Additionally, petitioner claimed an investment tax credit in the amount of $821 for the purchase of a Corvette automobile in 1982. Petitioner claimed similar expenses against the income he received from Besco during the period 1974 through 1979.

During the course of Balash's investigation, Tubre and Kahn admitted that they had lied with respect to petitioner's involvement in Besco's sales to customers other than ASI. Subsequently, Besco pled guilty to one count of violating section 7206(1) for filing a return containing a false statement with respect to its payments to petitioner.

In April 1987, petitioner was indicted on four counts of tax fraud for violating section 7206(1) by taking false deductions with respect to the income received from Besco. Petitioner was thereafter convicted on each count based on a plea of nolo contendere.

In April 1992, an internal revenue agent initiated an examination of petitioner's tax returns for the taxable years at issue. Subsequently, respondent determined that petitioner is not entitled to a deduction for the Schedule C expenses claimed for any taxable year at issue. Respondent further disallowed the

investment tax credit claimed in 1982 for the purchase of the Corvette automobile.

OPINION

Petitioner advances two alternative arguments in response to respondent's determination of the deficiencies in and additions to tax set forth in the notice of deficiency.[5]  First, petitioner argues that assessment and collection of the taxes at issue are barred by the statute of limitations under section 6501(a).  In the alternative, petitioner argues that the equitable doctrine of laches operates to prevent assessment and collection of the taxes at issue.

Respondent rejects petitioner's arguments, contending instead that the statute of limitations does not prevent assessment and collection of the taxes at issue because petitioner filed fraudulent returns with respect to each taxable year at issue and, as a result, assessment and collection may be accomplished "at any time" pursuant to section 6501(c)(1).  Respondent also maintains that petitioner's argument with respect to the applicability of the doctrine of laches is without merit.

---

[5]Petitioner's plea of nolo contendere to criminal tax evasion does not estop petitioner from challenging the civil fraud penalties alleged in this case.  Hicks Co. v. Commissioner, 56 T.C. 982, 1027 (1971), affd. 470 F.2d 87 (1st Cir. 1972).  Generally, a plea of nolo contendere is inadmissible in a civil proceeding.  Fed. R. Evid. 410.  A conviction based on such a plea, however, is admissible evidence for impeachment purposes.  Hicks Co. v. Commissioner, supra.

For reasons discussed herein, we find that neither the statute of limitations nor the doctrine of laches precludes assessment and collection of the deficiencies in and additions to tax determined by respondent.

Schedule C Expenses

Respondent's determinations are presumed correct, and petitioner bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and petitioner bears the burden of proving that he is entitled to any deduction claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra at 115. This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). Additionally, section 6001 requires petitioner to keep records sufficient to show whether he is liable for tax.

Petitioner essentially restricts his entire argument to a contention that respondent has failed to establish that petitioner fraudulently claimed deductions for the Schedule C expenses at issue. Whether respondent has met her burden with respect to the issue of fraud, however, is irrelevant with respect to the instant issue. That respondent must prove fraud does not mean that petitioner is free from the burden on the underlying deficiencies.

Petitioner concedes that he is unable to substantiate the expenses at issue. He contends that all evidence pertaining to such expenses was provided to his accountants, who in turn relinquished possession of such evidence to the Government during the grand jury phase of the criminal investigation against him. Respondent, however, has informed the Court that she requested and received all evidence used by the grand jury and that no such records were among the materials she received.

We find that having failed to provide substantiation of the Schedule C expenses, petitioner has not carried his burden of proof on this issue. Accordingly, respondent's determination is sustained.

Investment Tax Credit

Respondent also determined that petitioner is not entitled to an investment tax credit in the amount of $821 for 1982 because it has not been established that petitioner acquired any qualified investment property during the taxable year. As noted above, respondent's determinations are benefited by a presumption of correctness and petitioner bears the burden of proving the contrary. Rule 142(a); New Colonial Ice Co. v. Helvering, supra at 440; Welch v. Helvering, supra at 115.

Petitioner has not offered any evidence with respect to the investment tax credit claimed on the purchase of his Corvette automobile. Again, petitioner restricts his entire argument to the contention that the statute of limitations precludes

respondent's assessment and collection of the taxes at issue. Petitioner simply does not address the components of the underlying deficiencies. Accordingly, respondent is sustained on this issue.

Additions to Tax for Fraud

Respondent bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). The burden that respondent bears in proving fraud under section 6653(b) or section 6501(c)(1) is one and the same. Ruidoso Racing Association, Inc. v. Commissioner, 476 F.2d 502, 505, 507 (10th Cir. 1973), affg. in part and revg. in part T.C. Memo. 1971-194. Respondent must establish that petitioner underpaid his taxes for each taxable year at issue and that some part of that underpayment was due to petitioner's intent to conceal, mislead, or otherwise prevent the collection of such taxes. Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). For the reasons set forth below, we find that respondent has met her burden.

The issue of fraud presents a factual question which must be decided on the basis of an examination of all the evidence in the record. Mensik v. Commissioner, 328 F.2d 147 (7th Cir. 1964), affg. 37 T.C. 703 (1962); Stone v. Commissioner, 56 T.C. 213, 224 (1971); Stratton v. Commissioner, 54 T.C. 255, 284 (1970). Fraud is never presumed; it must be established by some independent

evidence of fraudulent intent.  Beaver v. Commissioner, 55 T.C. 85 (1970).  Fraud may be proved by circumstantial evidence and inferences drawn from the record because direct proof of the taxpayer's intent is rarely available.  Spies v. United States, 317 U.S. 492 (1943); Rowlee v. Commissioner, 80 T.C. 1111 (1983); Stephenson v. Commissioner, 79 T.C. 995 (1982), affd. 748 F.2d 331 (6th Cir. 1984).

Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing, effectuated by conduct designed to conceal, mislead, or otherwise prevent the collection of such tax.  Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939); Estate of Pittard v. Commissioner, 69 T.C. 391 (1977); McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975).

Fraudulent intent may be inferred from a pattern of conduct. Spies v. United States, supra at 499.  A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud.  See Holland v. United States, 348 U.S. 121, 137 (1954); Otsuki v. Commissioner, 53 T.C. 96 (1969).  Fraud may also be inferred where the taxpayer makes false and inconsistent statements to revenue agents, Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980), or files false documents.  Stephenson v.

Commissioner, supra.  Similarly, understated income, inadequate records, implausible or inconsistent explanations of behavior, concealment of assets, and failure to cooperate with tax authorities are all indicia of fraud.  Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. T.C. Memo. 1984-601.

Petitioner correctly points out that respondent cannot properly rely on the presumption of correctness generally accorded her determinations in order to satisfy her burden with respect to an issue of fraud.  See Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989).  Petitioner fails to recognize, however, that respondent is not attempting to do so in the instant case. When respondent's argument is appreciated, it is apparent that respondent fully recognizes her two-pronged burden.

The parties agree that, in order to prove fraud, respondent must establish that (1) an underpayment exists and (2) petitioner intended to evade taxes known to be owing by conduct designed to conceal, mislead, or otherwise prevent the collection of taxes. See Rowlee v. Commissioner, supra.  It is petitioner's argument, however, that respondent is relying on petitioner's failure to substantiate the Schedule C expenses at issue in order to establish that an underpayment exists.  We disagree.  The substance of respondent's argument does not depend on such reliance.  With respect to establishing fraud, respondent principally argues that petitioner did not incur the expenses at issue, not that petitioner failed to substantiate such expenses.

As support for this argument, respondent contends that the income petitioner received from Besco was generated from kickback payments based solely on purchases ASI's paint department made from Besco. It follows, respondent's argument continues, that petitioner did not maintain a business the nature of which would have given rise to the expenses claimed by petitioner. Respondent rejects petitioner's contention that such income was generated in the form of commissions received in exchange for various activities that petitioner performed while advancing Besco's interests. Despite petitioner's fleeting recognition of this formulation of respondent's argument, petitioner limits his argument to the contention that respondent is relying on petitioner's failure to substantiate the expenses at issue in order to establish that an understatement exists.

Respondent has clearly and convincingly established that an underpayment of tax exists. An underpayment can be accomplished by an overstatement of deductions. Estate of Temple v. Commissioner, 67 T.C. 143, 161 (1976). The testimony elicited at trial demonstrates that the income petitioner received from Besco during the years at issue was derived exclusively from petitioner's status as superintendent of ASI's paint department; petitioner was not furthering Besco's interests outside ASI in any material fashion. As superintendent of the paint department, petitioner was in a position to influence the department's purchasing decisions, particularly decisions involving suppliers.

Using this power to influence, petitioner caused the paint department to purchase various chemical compounds from Besco. In exchange, Besco paid petitioner certain amounts of money. This is a classic kickback situation, and petitioner's attempt to camouflage the payments as commissions must fail.

Both Tubre's and Kahn's testimony at trial is convincing. Tubre described a series of events involving petitioner dating back to the early 1970's. He testified that petitioner first sought to promote Besco's products to customers other than ASI but that this endeavor proved unsuccessful. Tubre further testified that petitioner subsequently expressed interest in receiving the kickback payments with respect to purchases ASI's paint department made from Besco. Tubre also testified that petitioner did not perform any activity on behalf of Besco during the years at issue in exchange for the payments petitioner received. Both Tubre and Kahn testified that the payments were made to petitioner out of fear of losing business from ASI's paint department. Tubre further testified that he alone initiated and serviced Besco's accounts with ASI, both within and without the paint department. Tubre also testified that he, on behalf of Besco, lied to Balash, when he told her that the payments to petitioner were in exchange for services performed by petitioner with respect to non-ASI accounts. He also testified that it was out of fear of losing Besco's account with ASI's paint department that prompted him to lie to Balash.

The expenses used to offset the kickback payments are attributable to petitioner's alleged activity on behalf of Besco. This is implicit by petitioner's use of the Schedule C to identify the income received from Besco and to claim the alleged expenses as deductions against such income. Respondent, however, has established through the credible testimony of both Tubre and Kahn that petitioner did essentially nothing on behalf of Besco outside ASI during the years at issue. Much the same can be said with respect to petitioner's activity within ASI. Aside from causing the paint department to purchase chemicals from Besco, petitioner did little else not required by his position. At best, the friendship between petitioner and Tubre facilitated Tubre's activity throughout ASI by making access to the facility easier than Tubre would have otherwise experienced absent such friendship. Further, respondent has shown that Besco did not consider the payments it made to petitioner to be anything other than kickbacks tied exclusively to the purchases of Besco products made by the paint department. Petitioner's contention otherwise is not convincing. Tubre viewed the payments as kickbacks when he sought advice regarding such payments from Besco's accountant. In fact, that the payments would be considered kickbacks was his principal concern. Besco, nonetheless, followed the accountant's advice and packaged the payments in a disguise. Yet simply disguising the payments as commissions did not convert them into commissions.

Respondent has established that petitioner was not working for or on behalf of Besco outside ASI during the years at issue. Respondent also has established that the payments received by petitioner were kickbacks attributable solely to Besco's sales to ASI's paint department and not commissions as petitioner contends were received in exchange for his services outside the paint department.  Therefore, it follows that the expenses allegedly incurred while generating the "commissions" were not so incurred. Petitioner was not servicing accounts for Besco or providing Besco with leads; this activity ceased in the early to mid 1970's after it proved unsuccessful.  Similarly, petitioner was not advancing Besco's interests inside ASI in departments other than the paint department.  The fact that petitioner conducted a variety of parties that were attended by multiple guests, traveled extensively on behalf of ASI, and took a few trips along with Tubre and Kahn does little to convince us otherwise.  Such activity is common among friends, and petitioner, Tubre, and Kahn were undoubtedly friends.  There is no credible evidence that suggests that these activities were engaged in by petitioner with an intention of advancing Besco's interests.  That petitioner was "capable" of advancing Besco's interests is irrelevant. Accordingly, we conclude that respondent has clearly and convincingly established that an underpayment exists for each of the taxable years at issue.

Respondent also has established that at least a portion of each underpayment determined immediately above is attributable to fraud. We find that petitioner's false statements to Balash regarding the source of the expenses at issue to be the most convincing evidence of petitioner's fraudulent intent. Fraud may be inferred where a taxpayer makes false representations. See Grosshandler v. Commissioner, 75 T.C. 1 (1980). After Balash initiated her investigation, she arranged to meet and discuss the kickback payments with Tubre. Tubre informed petitioner of his pending meeting with Balash, and petitioner in turn requested that Tubre, knowing such information to be false, inform Balash that petitioner was involved with several of Besco's accounts. Tubre complied with petitioner's request but refused to cooperate further. After requests by petitioner, however, Tubre provided petitioner with the names of several Besco customers which petitioner could represent to Balash as having given rise to the kickback payments. At a meeting between petitioner and Balash on December 20, 1984, petitioner used these names in attempt to explain the income received from Besco and justify the expenses at issue. The record clearly shows, however, that petitioner knew these representations were false at the time he made them. While petitioner contends otherwise, there is no doubt that petitioner's lie was designed to justify his claiming the expense deductions. If petitioner had actually incurred the expenses at issue and honestly believed that such expenses were deductible,

we are confident he would not have lied and encouraged others to lie with respect to the activities that gave rise to such expenses.

Fraudulent intent may also be inferred from a pattern of conduct, particularly if such pattern involves the underreporting of income. See Holland v. United States, 348 U.S. 121 (1954); Spies v. United States, 317 U.S. 492 (1943); Otsuki v. Commissioner, 53 T.C. 96 (1969). We find that the record clearly indicates that petitioner engaged in a pattern of underreporting his income. During a period when petitioner knew his income from Besco was based solely on the purchases his department made from Besco, petitioner offset such income with various expenses known not to exist. As this pattern involves consistent and substantial understatements of income, we conclude that it is strong evidence of fraud. See Marcus v. Commissioner, 70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980).

The record contains other evidence that supports an inference of fraud. Respondent has established to the satisfaction of the Court that petitioner maintained inadequate or no records with respect to the alleged Schedule C expenses used to offset the income received from Besco during the taxable years at issue. This failure to maintain adequate records may be used to support a finding of fraud. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986); Woodham v. Commissioner, 256 F.2d

201 (5th Cir. 1958), affg. T.C. Memo. 1955-319; Parsons v. Commissioner, 43 T.C. 378 (1964). While this indicia of fraud is less compelling than are petitioner's false representations and pattern of underreported income, it further solidifies the inference of fraudulent intent in the instant case. Balash testified that during her initial meeting with petitioner on December 12, 1984, petitioner informed her that he did not maintain business records. Balash further testified that petitioner subsequently told her that he had given his records of the alleged Schedule C expenses to his accountants. No records have been produced, however; nor is there credible evidence in the record that explains their absence. Petitioner contends that all such records were relinquished to the possession of the Government for use by the grand jury during the criminal phase of the investigation against him. Respondent, however, informed the Court that she requested and received all evidence used by the grand jury and that no such records were among the materials she received. We find respondent's statement credible. Moreover, petitioner's accountant and preparer of his 1983 return testified that he could not recall whether petitioner provided him with records of the alleged expenses at issue.

The circumstantial evidence and inferences drawn from the record clearly and convincingly established that petitioner filed fraudulent returns for each taxable year at issue. Accordingly, respondent is sustained on this issue.

Petitioner contends that he relied on the advice of his accountants in reducing the income received from Besco by the alleged expenses and that such reliance precludes a finding of fraudulent intent.  For petitioner to prevail on his reliance argument, however, he must have provided his accountants with full and correct information.  Estate of Temple v. Commissioner, 67 T.C. 143 (1976); see Morris v. Commissioner, T.C. Memo. 1992-635, affd. without published opinion 15 F.3d 1079 (5th Cir. 1994).  In this case, petitioner's alleged reliance does not preclude a finding of fraudulent intent.

Petitioner maintains that his accountants were fully aware of the "nature" of the payment arrangement between Besco and petitioner when they advised petitioner to take a deduction for the expenses at issue.  This contention does little more than suggest that petitioner's accountants conspired to defraud the Government.  It does not, however, address whether petitioner provided his accountants with full and correct information regarding the alleged expenses at issue.  Petitioner, not his accountants, handled his affairs.  The record lacks sufficient evidence for us to conclude that petitioner provided his accountants with full and correct information so as to justify petitioner's reliance on an accountant's advice.  Because petitioner's return preparer for 1983 testified that he could not recall how petitioner informed him of the alleged expenses at issue, and because petitioner declined to testify, all that is

available to evaluate petitioner's contention is petitioner's argument itself. While we have little doubt that petitioner's accountants, particularly Lee, were apprised of the nature of the payment arrangement between Besco and petitioner, we refrain from concluding that these accountants instructed petitioner to take deductions for expenses knowing that such expenses were not incurred.

We find petitioner's argument with respect to reliance on his tax advisers to be without merit.

Statute of Limitations

Petitioner asserts that the statute of limitations under section 6501(a) precludes assessment and collection of the deficiencies in and additions to tax determined by respondent. Respondent, on the other hand, contends that the statute of limitations does not bar assessment and collection because petitioner filed fraudulent returns for each taxable year at issue.

Section 6501(a) provides the general rule that a tax must be assessed within 3 years of the filing of a return. Section 6501(c)(1) provides an exception to the general rule in cases where a false or fraudulent return is filed by a taxpayer with the intent to evade tax. If the exception set forth in section 6501(c)(1) is applicable, assessment may be made at any time. As we have concluded that respondent has established by clear and convincing evidence that petitioner fraudulently intended to

evade paying taxes known to be owing for each of the taxable years at issue, the limitations period is extended indefinitely pursuant to section 6501(c)(1) for each such year. Accordingly, respondent is sustained on this issue.

Laches

Petitioner alternatively argues that the equitable doctrine of laches operates to preclude respondent's assessment and collection of the deficiencies in and additions to tax at issue in the instant case. Respondent disagrees and contends that the doctrine of laches must yield to the indefinite limitations period imposed by section 6501(c)(1).

The doctrine of laches prohibits a party from asserting a claim following an unreasonable delay by such party when there has been a change in circumstances during such delay which would result in severe prejudice against an opposing party should the claim be permitted. See Albertson v. T.J. Stevenson & Co., 749 F.2d 223, 233 (5th Cir. 1984). It is well settled that the United States is not subject to the defense of laches in enforcing its rights. Guaranty Trust Co. v. United States, 304 U.S. 126, (1938); United States v. Thompson, 98 U.S. 486 (1878). "[L]aches may not be asserted against the United States when it is acting in its sovereign capacity to enforce a public right or protect the public interest". United States v. Popovich, 820 F.2d 134, 136 (5th Cir.). The timeliness of Government claims is governed by the statute of limitations enacted by Congress. See

United States v. Summerlin, 310 U.S. 414, 416, (1940); Chevron, U.S.A., Inc. v. United States, 705 F.2d 1487, 1491 (9th Cir. 1983); Foster v. Commissioner, 80 T.C. 34, 229 (1983), affd. in part and vacated in part 756 F.2d 1430 (9th Cir. 1985); Saigh v. Commissioner, 36 T.C. 395, 424-425 (1961); United States v. Manufacturers Hanover Trust Co., 229 F. Supp. 544, 545-546 (S.D.N.Y. 1964).

In the present case, section 6501(c)(1), which we have determined to be applicable, expressly authorizes respondent to assess deficiencies against petitioner "at any time". Accordingly, respondent is sustained on this issue.

To reflect the foregoing,

Decision will be

entered for respondent.