James **ROE**, Plaintiff,

v.

**THE CITY OF NEW YORK, New York City Police Commissioner Bernard Kerik, and New York City Police Officers Lance Ho, Thomas Hickey, and John Does # 1–9, Defendants.**

**No. 00 CIV 9062 RWS.**

United States District Court, S.D. New York.

Aug. 3, 2001.

Commissioner Bernard Kerik ("Kerik" or the "Commissioner"), New York City Police Officers Lance Ho ("Ho") and Thomas Hickey ("Hickey") (collectively the "defendants") oppose the motions on the grounds of standing, ripeness, and improper joinder. In addition, defendants cross-move to strike numerous paragraphs in the proposed class action complaint ("PCC" or "class complaint") and exhibits attached thereto on the grounds that the material therein is immaterial to the claims and prejudicial to the defendants. For the reasons set forth below, the motion to amend the complaint and the motion for John B. to proceed anonymously are granted, and the motion to strike is denied.

## The Parties

At all times relevant to this action, plaintiff James Roe was a New York City resident and a registered participant in the Lower East Side Needle Exchange Program ("LESNEP"), a State-authorized New York City needle exchange program ("NEP").

Putative plaintiff Hilton Perez is a New York City resident and registered participant in the Foundation for Research on Sexually Transmitted Diseases (FROSTD), a State-authorized New York City NEP.

Putative plaintiff John B. is a New York City resident and a registered participant in the LESNEP.

Putative class members Jim Moes # 1–# 3 are yet to be identified registered participants in registered New York City NEP's.

Defendant City of New York is a municipal entity created and authorized under the laws of the State of New York. The City is authorized to maintain a police department (the "New York City Police Department" or "NYPD").

Defendant New York City Police Commissioner Bernard Kerik is the Police

Urban Justice Center by Corinne A. Carey, Doug Lasdon, New York City, Debevoise & Plimpton by Dennis H. Hraritzky, Michael J.D. Sweeney, Helen Y. Kim, New York City, Swidler, Berlin, Shereff, Friedman by Adam J. Wasserman, New York City, for Plaintiff.

Michael D. Hess, Corporation Counsel of the City of New York by Lisa J. Black, Assistant Corporation Counsel, New York City, for Defendants.

## OPINION

SWEET, District Judge.

Anonymous plaintiff James Roe ("Roe") moves to amend the complaint pursuant to Fed.R.Civ.P. 15(a) to add (1) a prayer for injunctive relief for a class of persons similarly situated to himself; and (2) injunctive relief claims on behalf of putative plaintiffs Hilton Perez ("Perez") and John B. as representatives of the putative class; as well as (3) to allow John B. to proceed anonymously. Defendants City of New York ("the City"), New York City Police

Commissioner for the City, and recently replaced former Police Commissioner Howard Safir ("Commissioner Safir"), who was in office when the events set forth in the complaint occurred.

Defendant Lance Ho is a NYPD detective.

Defendant Thomas Hickey is a NYPD police officer.

Putative defendant Paul Demarato ("Demarato") is a NYPD police officer.

### Background

This civil rights action alleges that the defendants have a practice of unlawfully harassing, arresting and prosecuting injection drug users such as plaintiffs, who are registered participants in state-authorized New York City needle exchange programs. Roe, Perez, and John B. (hereinafter collectively referred to as "plaintiffs," for ease of reference) contend that this practice not only violates their rights under the Fourth and Fourteenth Amendments to the United States Constitution, and the laws of New York, but also threatens public health by eviscerating the effectiveness of lawful clean needle exchange programs ("NEP's"), which save lives by reducing the spread of AIDS and other blood-borne diseases.

The complaint, filed on November 28, 2000, sought damages for James Roe for illegal search, false arrest, malicious prosecution, forced participation in a "buy and bust," conspiracy to violate his civil rights, failure to train, official policy to violate civil rights, violation of state rights, and respondeat superior liability for violation of state rights.

On March 30, 2001, Roe moved to amend the complaint pursuant to Fed. R.Civ.P. 15(a). The proposed class action complaint seeks to assert claims for declaratory and injunctive relief protecting the right of a class of registered participants

in licensed NEP's legally to possess injection equipment obtained from or to be returned to those programs. The PCC also seeks to add Hilton Perez and John B. as representatives of the putative class, to provide additional facts relating to their claims for injunctive relief, and to add Officer Demarato, who arrested Perez, as a defendant.

In addition to facts specific to the putative plaintiffs' claims, the PCC sets forth detailed factual allegations pertaining to the link between the use of "dirty" needles and the spread of HIV/AIDS and other blood-borne diseases, the role of NEP's in saving lives by preventing further transmission of disease, and New York City's needle exchange program. Notably, the PCC alleges that:

> One of the greatest impediments to an effective needle exchange program is fear on the part of IDUs [intravenous drug users] that they will be arrested while participating in the [needle exchange] program. Indeed, researchers have concluded that the sharing of injection equipment is due primarily to fear of arrest and incarceration for violation of drug paraphernalia laws and ordinances that prohibit manufacture, sale, distribution, or possession of equipment and materials intended to be used with narcotics.

(PCC ¶ 56.) The PCC alleges that Roe and Perez were each unlawfully arrested by defendant NYPD officers for possessing hypodermic instruments they carried pursuant to their registered participation in a lawful NEP, and that the NYPD has a continuing practice of targeting NEP participants, which not only violates their rights under both the federal constitution and the New York State law pertaining to needle exchanges, but also deters Roe, Perez, John B. and other putative class

members from participating in the needle exchange program.

John B. has also filed a motion to proceed anonymously because he fears adverse consequences if his condition as an injection drug user with full-blown AIDS were to become public. The PCC has been filed under seal pending a ruling on his motion.

Defendants have opposed the motion to amend and that portion of the anonymity motion relying on John B.'s HIV status. On May 1, 2001, defendants cross-moved to strike numerous paragraphs in the complaint, plus exhibits attached thereto, each of which pertain to HIV, as immaterial to the claims and prejudicial to the defendants.

The motions were deemed fully submitted after oral argument on May 16, 2001.

## *Discussion*

### I. *The Motion to Amend is Granted*

The defendants oppose the motion on the grounds that (1) Roe, Perez, and John B. do not have standing to claim injunctive relief; (2) John B's claims are not ripe for adjudication; and (3) putative plaintiffs Perez and John B. are not appropriate parties to be joined pursuant to Fed. R.Civ.P. 20(a).

### A. *Roe and the Putative Plaintiffs Have Standing to Seek Injunctive Relief*

The PCC alleges that it is the official policy and practice to stop and search persons in allegedly known "drug areas" without individualized reasonable suspicion (PCC ¶¶ 75, 208), that NEP participants in the vicinity of an NEP center are likely to be in possession of injection equipment, as authorized by New York's Public Health Law (PCC ¶¶ 44–47), that it is the NYPD's pattern and practice to ignore both the Public Health Law and its own "official policy" by unlawfully arresting NEP participants for possession of injection equipment and unusable trace amounts of controlled substances contained therein (PCC ¶ 4, 55, 209–11). Moreover, the PCC alleges that this NYPD practice injures the plaintiffs by instilling "constant fear of illegal harassment, arrest, and prosecution" for their lawful possession of needles (PCC ¶¶ 146, 154), which discourages them from participating in clean needle exchange programs (PCC ¶¶ 108, 130, 131, 138–43, 155) and thereby significantly increases their risk of contracting HIV and transmitting it to others (PCC ¶ 56–59, Ex. I [1]).

### 1. *Constitutional and Prudential Standing Requirements*

In order to meet the constitutional requirement of standing, every federal plaintiff must establish three elements: "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations and internal quotation marks omitted).

Plaintiffs seeking injunctive relief must establish a fourth element to have standing, namely a "real and immediate threat of repeated injury" demonstrated by more than "past exposure to illegal

---

1. Ricky N. Blumenthal, et al. *Collateral Damage in the War on Drugs: HIV Risk Be-* *haviors Among Injection Drug Users,* 10 Int'l J. on Drug Policy 25, 31–33 (1999).

conduct." *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (*quoting O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)). In other words, plaintiffs asserting an injunction claim must allege the probability of a future encounter with the defendant which is likely to lead to a similar violation of some protected right. *See Lyons,* 461 U.S. at 105–06, 103 S.Ct. 1660.

Pursuant to the doctrine of prudential standing, courts must also inquire whether a plaintiff's claim rests on the legal rights of a third party, asserts only a generalized grievance, or asserts a claim that falls beyond the zone of interests protected by the legal provision invoked. *See Valley Forge Christian College v. Americans United,* 454 U.S. 464, 474–75, 102 S.Ct. 752, 759–60, 70 L.Ed.2d 700 (1982); *Matter of Appointment of Independent Counsel,* 766 F.2d 70, 74 (2d Cir.1985), *cert. denied,* 474 U.S. 1020, 106 S.Ct. 569, 88 L.Ed.2d 554 (1985). In essence, prudential standing restrains federal courts "from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Valley Forge,* 454 U.S. at 474–75, 102 S.Ct. at 759–60.

Defendants contend that plaintiffs have neither constitutional nor prudential standing to seek injunctive relief because they cannot meet the first prong of the actual injury test. They argue that the plaintiffs' fear of future arrests is "only a generalized grievance," and that the threat of future harm is speculative at best. (Def. Br. at 5, 6–13.) At the pleading stage, plaintiffs must merely allege facts sufficient to establish standing, *see Lujan,* 504 U.S. at 561, 112 S.Ct. 2130, and the Court must accept "all facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the plaintiff," *Securities Investor Protection Corp. v. BDO Seidman, LLP,* 222 F.3d 63, 68 (2d Cir.2000).

### 2. *Constitutional Standing: The Proposed Class Complaint Sufficiently Alleges Injury–in–Fact*

Defendants contest whether the alleged threat of arrest is "both real and immediate, not conjectural or hypothetical." *Lyons,* 461 U.S. at 101–02, 103 S.Ct. 1660 (1983). Specifically, they argue that the factual predicate for the plaintiffs' claim—which they construe as the "two isolated incidents [ (i.e. arrests) that] occurred more than one year apart, by different officers and in different boroughs of the City of New York," plus John B.'s knowledge of similar stops of others—are insufficient to demonstrate a likelihood that they will be arrested in the future. (Def. Br. at 8, 9.) [2]

#### a. *Prior Acts*

Alleging that police have repeatedly committed unlawful acts strengthens a plaintiff's argument that future injury is likely. *See, e.g., Allee v. Medrano,* 416 U.S. 802, 815, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974) (injunctive relief appropriate given a "persistent pattern of police misconduct" as manifested by a series of unconstitutional acts by police officers against union organizers); *Thomas v. County of Los Angeles,* 978 F.2d 504, 508 (9th Cir.1992) (realistic threat of future injury found where record indicated that

**2.** As no claim is made pertaining to the sufficiency of the complaint with regard to the second or third *Lujan* factors, causation and redressability, these factors need not be addressed.

the challenged police conduct was repeatedly "condoned and tacitly authorized by department policy makers"); *National Congress for Puerto Rican Rights v. The City of New York*, 75 F.Supp.2d 154, 162 (S.D.N.Y.1999) (plaintiffs alleging "numerous instances of police misconduct [that allegedly] occurred in a small six by seven block area, [where] some minority residents of the area [had] been mistreated by deputies more than once" had standing).

Nonetheless, there is no per se rule requiring more than one past act, or any prior act, for that matter, as a basis for finding a likelihood of future injury. *See New Hampshire Right to Life Political Action Committee v. Gardner*, 99 F.3d 8, 13 (1st Cir.1996) (for purposes of Article III standing, "a credible threat of present or future prosecution itself works an injury that is sufficient to confer standing, even if there is no history of past enforcement").

Moreover, the predicate for plaintiffs' claims must be viewed in the context of the entire proposed class complaint, which alleges not only the aforementioned arrests, but also that the NYPD has a pattern and practice of detaining and arresting registered NEP participants in the vicinity of NEP centers. As pleaded, this allegation contextualizes the prior arrests in a specific, systematic, city-wide NYPD practice which is alleged to be ongoing, and therefore likely to lead to arrests of NEP members in the future.

In *Lyons*, the Supreme Court held that there was no likelihood that the plaintiff, who had been stopped for a traffic violation, would be subject to a choke hold by the Los Angeles Police Department ("LAPD") in the future, although choke holds had injured him and numerous persons, and the practice was employed pursuant to departmental policy. 461 U.S. at 97–98, 103 S.Ct. 1660. Here, in contrast, the putative plaintiff class is a group of

individuals that claims to be consistently targeted by the NYPD by virtue of their registered participation in, and regular visits to, state-authorized needle exchange programs which have centers in "known drug areas." These facts distinguish this action from *Lyons* in three ways.

First, the PCC alleges that the NYPD arrests NEP members for engaging in *lawful* behavior. In *Lyons*, the plaintiff had committed a traffic violation, and the Court was loath to assume that he would again violate the law and thereby find himself likely to be subject to the chokehold in the future. Other courts have appropriately distinguished *Lyons* in cases where the plaintiffs have been subjected to police action for engaging in legal activity. *See, e.g., Hodgers–Durgin v. De La Vina*, 199 F.3d 1037, 1041 (9th Cir.1999) (standing exists for plaintiffs merely driving near border); *Thomas*, 978 F.2d at 508 (standing to enjoin police brutality directed at innocent minority citizens); *Hernandez v. Cremer,* 913 F.2d 230, 234–35 (5th Cir. 1990) (courts should not be reluctant to find that plaintiff will be subject to future police conduct placing him at risk of injury where "the injury alleged to have been inflicted did not result from an individual's disobedience of official instructions [or any other] form of misconduct"); *LaDuke v. Nelson*, 762 F.2d 1318, 1321 (9th Cir.1985) (standing to enjoin unlawful INS searches directed at innocent migrant farm workers); *Nat'l Congress*, 75 F.Supp.2d at 161 (standing exists for innocent plaintiffs who were victims of unconstitutional stop and frisks).

The rationale for finding that plaintiffs have standing on this basis is analogous to that employed in the First Amendment context, where a threat of police action that chills the exercise of protected speech may confer standing to sue. *See Babbitt v. United Farm Workers National Union,*

442 U.S. 289, 298, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895 (1979) ("When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.' ") (citation omitted).

Second, unlike the individual plaintiff in *Lyons*, the PCC alleges that the plaintiffs in this case are all intravenous drug using NEP members who frequent NEP centers in "known drug areas." Courts have repeatedly found that plaintiffs who are members of such an identifiable class of targeted individuals have standing to sue. *See, e.g., Thomas*, 978 F.2d at 508 (standing to enjoin conduct aimed at Black and Latino residents within specified area); *Maryland State Conference of NAACP Branches v. Maryland Dep't of State Police*, 72 F.Supp.2d 560, 564–65 (D.Md.1999) (standing to enjoin racially discriminatory vehicle stops); *Nat'l Congress*, 75 F.Supp.2d at 162 (standing to enjoin racially discriminatory stop and frisk policy).

Third, in contrast to *Lyons*, the facts alleged here constitute more than a "chain of contingencies making the likelihood of future harm speculative." *Nat'l Congress*, 75 F.Supp.2d at 161. There, the Supreme Court found that in order to make out the likelihood of future injury element of an actual case or controversy, the plaintiff would have to allege not only:

> that he would have another encounter with the police, but also make the incredible assertion either (1) that *all* police officers always choke *any* citizen

with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation, or for questioning, or (2) that the City ordered or authorized police officers to act in such a manner.

*Lyons*, 461 U.S. at 107, 103 S.Ct. 1660. In this case, the chain of events alleged is much stronger. The potential victims are clearly delineated in the putative class as set forth above. The alleged NYPD targeting of NEP members in "known drug areas," combined with the fact that the plaintiff NEP members frequent such areas, reasonably demonstrates a likelihood that plaintiffs will be arrested. Moreover, any NEP participant stopped on his or her way to or from an authorized NEP center is likely to be found in possession of injection equipment possibly containing unusable drug residue, which will lead to an arrest pursuant to the NYPD's pattern and practice, as alleged in the PCC. This scenario is far from the "incredible" yarn hypothesized by the *Lyons* Court.

#### b. *Fear of Future Arrest*

■ The "injury in fact" element of Article III standing "must be concrete in both a qualitative and temporal sense ... and the alleged harm must be actual or imminent," rather than "conjectural" or "hypothetical." *Whitmore v. Arkansas*, 495 U.S. 149, 152, 155, 110 S.Ct. 1717, 1720, 1723, 109 L.Ed.2d 135 (1990); *see also Curtis v. City of New Haven*, 726 F.2d 65, 67–69 (2d Cir.1984) (victims of police use of mace had no standing to seek injunction against future use based solely on past use against them). Given the relative infrequency of prior unlawful arrests and the existence of New York laws [3] and

---

**3.** *See* N.Y. Pub. Health L. § 3381(4), (5) (McKinney's 2000) (providing exemption to criminal laws on possession of hypodermic instruments under specific circumstances and authorizing the Public Health Commissioner

to establish regulations for the authorization of needle exchange programs); 10 N.Y. C.R.R. § 80.135 (2001) (authorized NEP membership card is no longer required to be in lawful possession of a syringe); NYPD Op-

official police policies designed to prevent such unlawful action, defendants argue that plaintiffs' fear of future arrest constitutes only "the mere possibility of harm," rather than "injury in fact." (Def. Br. at 10.)

Plaintiffs are likely to have standing if they are directly implicated by a statute or official police policy. *See Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (plaintiff had twice been threatened with arrest and had witnessed his companion's arrest for violating the challenged statute); *Deshawn E. v. Safir*, 156 F.3d 340 (2d Cir.1998) (members of plaintiff class were subject to allegedly illegal interrogation pursuant to police policy). However, the existence of the Public Health Law and official police policy against such unlawful police action does not change the likelihood of actual, imminent harm where, as here, the complaint alleges that the police have a pattern and practice of disregarding these laws. *See, e.g., Thomas*, 978 F.2d at 508 (police brutality directed at minority citizens meets actual injury test although such acts violate the Constitution); *Maryland State Conference*, 72 F.Supp.2d at 564 (racially discriminatory automobile stops); *Nat'l Congress*, 75 F.Supp.2d at 161 (racially discriminatory stop and frisks). As the PCC alleges that the NYPD continues to violate its own operating orders, the recent easing of requirements for lawful possession of a syringe in the Public Health Law and tightening of NYPD policy does not undermine plaintiffs' position.[4]

It is true that courts are loath to find that fear of an injury, without more, is not an injury in fact. *See, e.g., Martin v. Vaughn*, No. Civ. A. 92–3828, 1995 WL 458977, *1 (E.D.Pa.1995) (finding that the plaintiffs' "mental anguish" arising from fear of contracting HIV from HIV-positive food handlers was not an actual injury); *Robinson v. Vaughn*, Civ. A. No. 91–7646, 1992 WL 368461, *2 (E.D.Pa. 1992) (holding that "constant fear of contracting an asbestos-related disease" did not constitute actual injury under Pennsylvania law requiring manifestation of disease); *Board of Commissioners v. Nuclear Assurance Corp.*, 588 F.Supp. 856, 859–60 (N.D.Ohio 1984) (plaintiffs' fear of nuclear catastrophe on local roads was not actual injury and did not confer standing against nuclear fuel company).

Nonetheless, in certain circumstances, fear of a future injury has been found to confer standing. In *Lyons*, the Supreme Court held that "[t]he reasonableness of Lyons' fear is dependent upon the likelihood of a recurrence of the allegedly unlawful conduct," but that his "subjective apprehensions" that such a recurrence would even take place were not enough to support standing. *Id.*, at 108, n. 8, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675. This standard was met in *Friends of the Earth, Inc., v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000), where plaintiffs were members of an environmental group who lived on or near a river where the defendant disposed

---

erations Order # 23 at ¶ 7 (March 28, 2000) ("If a uniformed member of the service encounters a program participant in possession of syringes and an identification card from an authorized syringe exchange program, an arrest should *not* be effected if the only charge is criminal possession of a hypodermic instrument. Authorized participants should *not* be charged with criminal possession of a hypo-

dermic instrument, even in circumstances where an arrest is effected on another charge.") (emphasis in original), ¶¶ 8–9 (directing officers to verify participants' membership in NEP's and providing information on how to do so), ¶ 15 (revoking NYPD Operations Order # 70 (July 8, 1994)).

**4.** *See* footnote 3, *supra.*

of waste. The plaintiffs alleged that they had previously used certain regions in the river for recreational activities, but that the defendant's waste disposal activities induced them to forebear from continuing to use the river for fear of pollutants. The Supreme Court held that the plaintiffs' reasonable fear that the resulting pollutants would harm them and the river constituted an injury in fact and therefore was sufficient to confer standing. 528 U.S. at 183–84, 120 S.Ct. at 705.

The unique facts alleged in this case suggest that the plaintiffs' fear of arrest is reasonable because it is grounded in both prior arrests and an allegedly ongoing NYPD practice of targeting for unlawful arrest persons in "high drug areas" such as neighborhoods around needle exchange programs the plaintiffs frequent. *See supra.* Such a claim is not too attenuated to preclude standing. *Cf. Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (possible acts of unnamed police depending on their interpretation of police department procedure); *O'Shea,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (plaintiffs had no standing because harm depended on hypothetical possibility of being arrested, charged and tried before defendants).

Moreover, the PCC alleges that the fear itself causes a "distinct and palpable" injury. *Whitmore,* 495 U.S. at 155, 110 S.Ct. at 1723. Specifically, the fear of arrest (by plaintiffs and members of the putative class) translates directly into less frequent visits to the NEP centers, more frequent use of "dirty" and dulled needles, and a significantly higher risk of HIV contraction and transmission. (PCC ¶¶ 35, 49, 50, 56–59, 64, 108, 130, 131, 139–43.) Section 3381(4) and (5) of the Public Health Law [5] were enacted to reduce the impact of precisely this kind of injury.

In sum, PCC sufficiently alleges that the plaintiffs are likely to suffer actual, imminent injury due to the NYPD's alleged pattern and practice of unlawfully targeting NEP members in high drug areas for arrest. At this pleading stage, no more is required. The plaintiffs have constitutional standing to pursue their claims.

### 3. *Prudential Standing: The Claim Does Not Present a Generalized Grievance*

■ Defendants' final argument against standing is that the plaintiffs do not meet the criteria of prudential standing because they raise only a "generalized grievance." A "generalized grievance" is one "shared equally by all of a large class of citizens," *Etuk,* 936 F.2d at 1440, the resolution of which is better left to the political branch of government, *Lujan,* 504 U.S. at 563, 112 S.Ct. 2130.

■ That a clearly defined claim may potentially impact the public at large does not deprive a plaintiff of standing. *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1607–08, 60

---

5. These subsections provide in relevant part:
(4) The commissioner [of health] shall designate persons, or by regulation, classes of persons who may obtain hypodermic syringes and hypodermic needles without prescription and the manner in which such transactions may take place and the records thereof which shall be maintained.
(5) (a) The commissioner ... shall develop a limited number of cooperative pilot projects to test the practicality and effectiveness of the distribution of syringes for human injection which are intended for single use and which are non-reusable. . . .
N.Y. Pub. Health L. § 3381(4), (5) (McKinney's 1999). *See also* N.Y. Comp.Codes R. & Regs. tit. 10, § 80.135 (1993) (authorizing enumerated persons to distribute hypodermic syringes and needles pursuant to regulations, for "the purpose of preventing the transmission of human immunodeficiency virus in users of injectable drugs.").

L.Ed.2d 66 (1979) (prudential standing is intended "to avoid deciding questions of broad social import *where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim.*") (emphasis added); *Society Hill Towers Owners' Ass'n v. Rendell,* 210 F.3d 168, 176–77 (3d Cir.2000) (residents have standing to assert claim to enjoin noise and pollution for the benefit of historic neighborhood); *Sullivan v. Syracuse Housing Authority,* 962 F.2d 1101, 1108 (2d Cir.1992) (plaintiff had standing to contest religious constraints on use of the public community center in his housing complex because he "is not a simple bystander, using the courts to vindicate abstract value interests, or a mere citizen complaining of the nonobservance by others of the Constitution.").

In particular, actions to enjoin unlawful police action may meet prudential standing concerns although they are filed for the benefit of a particular group and may beneficially impact the public more generally. *See, e.g., Wilkinson v. Forst,* 591 F.Supp. 403, 409 (D.Conn.1984) (finding that Imperial Wizard of Ku Klux Klan had standing to sue police to enjoin practice of stopping and searching Klan marchers without reasonable suspicion, because "[w]hatever else one might say of plaintiff's wide-ranging activities, he is not simply an interested bystander roving about in search of unconstitutional state actions.").

As set forth above in the discussion of constitutional standing, the plaintiffs are personally affected by the allegedly unlawful practice of the NYPD, and as such are "best suited to assert [this] particular claim." *Gladstone,* 441 U.S. at 100, 99 S.Ct. at 1608. Although this action may impact the public health at large (PCC ¶ 59), the claims raised are clearly defined and targeted to vindicate the rights of a specific class of New York City intravenous drug users who are registered participants in state-authorized needle exchange programs. The concerns of prudential standing have been satisfied.

**B.** *John B.'s Claims Are Ripe for Review*

Ripeness, a constitutional doctrine that is closely related to standing, requires that courts refrain from review until an actual case or controversy is presented. *See Abbott Lab. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). A motion for leave to amend may properly be denied if it "fail[s] to present controversies ripe for judicial decision." *Marchi v. Board of Coop. Educational Svcs.,* 173 F.3d 469, 479 (2d Cir. 1999), *cert. denied,* 528 U.S. 869, 120 S.Ct. 169, 145 L.Ed.2d 143 (1999).

Ripeness is determined by "evaluat[ing] both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Gardner,* 387 U.S. at 148, 87 S.Ct. 1507; *Isaacs v. Bowen,* 865 F.2d 468, 478 (2d Cir.1989). A claim is fit for review when it requires no further factual development to crystallize the legal issues and aid the court in resolving them. *Ohio Forestry Association v. Sierra Club,* 523 U.S. 726, 737, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998); *Isaacs,* 865 F.2d at 478 ("The fitness inquiry is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur"). In addition, as a prudential matter, courts should consider deferring adjudication of constitutional matters if the case will be more effectively reviewed upon the development of additional facts. *Renne v. Geary,* 501 U.S. 312, 323, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991).

Defendants' final jurisdictional argument is that John B.'s claim is not ripe for review because, unlike Roe and Perez, his fear of arrest is based solely on the experiences of others, as he has not yet been arrested. (Def. Br. at 20–1.) However, although the development of additional facts will enhance his claim, he has already stated a sufficient factual foundation on which to assert his legal claims.

John B. asserts that he is a heroin addict with full-blown AIDS who registered as a member of the Lower East Side Needle Exchange Program ("LESNEP") in order to reduce the risk of transmitting HIV to others through shared "dirty" needles. (PCC ¶¶ 133, 136.) Because several of his friends who are also intravenous drug users ("IDU's") have been arrested and held in custody despite membership in NEP's, John B. has on occasion reused "dirty" needles rather than visiting LESNEP, for fear of being unlawfully stopped and arrested for possessing syringes containing unusable drug residue. (PCC ¶¶ 138–144.) As set forth above, John B. need not have been arrested in order to present an "actual injury." As he has alleged that he is within a specific class of individuals who are targeted by an ongoing NYPD practice and has specifically refrained from engaging in the legal behavior of carrying used needles to the NEP for fear of arrest, he needs to present no more facts to render his claims ripe for review.

Finally, these allegations demonstrate that John B. would suffer hardship if he could not assert his claims at this time. The hardship requirement is generally defined as "a real and immediate threat of prosecution" if judicial review were to be delayed. *Marchi*, 173 F.3d at 478. As set forth above, John B. has appropriately asserted that he will be subject to unlawful harassment, arrest and prosecution absent an injunction. (PCC ¶¶ 146, 147.) Of even more importance, perhaps, is his medical hardship and the increased public health risk he alleges will result if he is not permitted to pursue his claim at this time. (PCC ¶¶ 148–49.)

### C. *Perez and John B. Are Proper Plaintiffs*

Rule 15(a) provides that a party may amend a pleading only by leave of the court if more than 20 days have passed after the pleading is served, and that leave shall be "freely given if justice so requires." Fed.R.Civ.P. 15(a). The Supreme Court has, however, interpreted Rule 15 to permit such amendments only when (1) the party seeking the amendment has not unduly delayed, (2) when the party is not acting in bad faith or with a dilatory motive, (3) when the opposing party will not be unduly prejudiced by the amendment, and (4) when the amendment is not futile. *See Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir.2000) (*citing Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)).

In determining prejudice, courts must examine whether the opposing party will be required to expend significant additional resources, whether amendment will significantly delay disposition, and the movant's ability to bring a timely claim in another jurisdiction. *See Block*, 988 F.2d at 350. Prejudice is particularly likely where the amendment raises new theories of recovery or would require additional discovery. *See Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir.1998).

Motions to amend a complaint by adding new plaintiffs must also comply with Fed.R.Civ.P. 20, which allows permissive joinder of plaintiffs who "assert any right to relief jointly, severally, or in the alternative in respect of or arising out of

the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." Fed. R.Civ.P. 20(a). *See Abraham v. Volkswagen,* 795 F.2d 238, 251 (2d Cir.1986) (Rule 20(a) requires that a "question of law or fact common to all parties will arise in the litigation" for plaintiffs to be joined). Joinder of appropriate parties is encouraged so that common issues may be addressed in a single action. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

■ The defendants contend that neither Perez nor John B. is a proper plaintiff pursuant to Rule 20(a) because they do not share a common transaction, occurrence, or question of law or fact with James Roe, who asserts a variety of claims that are specific to the circumstances of his April 9, 1999 arrest.

Perez and John B. assert a right to relief jointly with Roe arising out of the same alleged occurrence: the NYPD's practice of unlawfully arresting NEP members. *See Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408, 1421 (S.D.N.Y.1989) (allegations of a pattern or practice are sufficient to satisfy the "same transaction or occurrence" requirement of Rule 20); *see also Alexander v. Fulton County,* 207 F.3d 1303, 1323–24 (11th Cir.2000) (citing cases). The existence of such a practice is a question of fact central to the claims of each of these three plaintiffs. Moreover, the claims of all three men depend on the legal effect of such a policy on their constitutional rights, in light of the uneasy intersection of the Public Health Law, which decriminalizes possession of hypodermic instruments as a means of encouraging participation in needle exchange programs,

and the Penal Law, which criminalizes drug possession.

That Roe has also asserted claims that are specific to his own arrest does not change the fact that the three plaintiffs share significant common questions of law and fact. *See Puricelli v. CNA Ins. Co.,* 185 F.R.D. 139, 143 (N.D.N.Y.1999) (allegations of a pattern of conduct by defendants sufficient to satisfy Rule 20 although plaintiffs had a "myriad" of difference between their claims); *cf. Hipp v. Liberty Nat. Life Ins. Co.,* 252 F.3d 1208, 2001 WL 575489 (11th Cir.2001) (reviewing class claims of employer discrimination plus individual constructive discharge claims); *Mehlenbacher v. Akzo Nobel Salt, Inc.,* 216 F.3d 291, 300 (2d Cir.2000) (class action by homeowners for diminution in property value due to public fear after collapse of neighboring salt mine included individual claims for actual property damages).

Adding the claims of Perez and John B. comports with fundamental fairness and will not unduly prejudice the defendants. *See State Teachers Retirement Board v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir. 1981) (undue prejudice will justify denial of a motion to amend). Defendants allege that they would be unduly prejudiced by joinder because it would delay discovery and confuse the jury. (Def. Br. at 17–18.)[6] Yet adding Perez and John B. as putative class representatives does nothing to complicate the issues the jury will eventually be asked to address. Finally, that discovery has not yet begun weighs against a finding of prejudice. In short, adding Perez and John B. as plaintiffs is not fundamentally unfair to the defendants.

As all the constitutional and prudential prerequisites have been met, the motion to file the proposed class complaint is granted.

---

**6.** Specifically, defendants allege that "the facts relating to one defendant as opposed to another would overlap in the jurors' minds during deliberation." *Id.*

## II. *The Motion to Proceed Anonymously is Granted*

 John B. has moved to proceed anonymously on the twin grounds of his ongoing drug use and HIV-positive status. Such a motion is commonly granted in cases that "concern[ ] matters of a highly sensitive and personal nature." *Moe v. Dinkins*, 533 F.Supp. 623, 627 (S.D.N.Y. 1981); *see also Doe v. United Services Life Insurance Co.*, 123 F.R.D. 437, 439 (S.D.N.Y.1988).

The defendants do not oppose the motion to the extent that it relates to his drug use. Yet they oppose allowing him to proceed anonymously due to his HIV-positive on the grounds that admitting evidence of his medical condition would unduly prejudice them.

Other courts have appropriately recognized that HIV-positive plaintiffs are in a highly sensitive position and therefore should be allowed to proceed anonymously. *See, e.g., Roe v. City of Milwaukee*, 37 F.Supp.2d 1127, 1129 (E.D.Wis.1999); *W.G.A. v. Priority Pharmacy, Inc.*, 184 F.R.D. 616, 617 (E.D.Mo.1999); *Patient v. Corbin*, 37 F.Supp.2d 433, 433–34 (E.D.Va. 1998); *Doe v. Alexian Bros. Medical Center*, No. 96 C 2042, 1996 WL 210074, *1 (N.D.Ill. Apr. 25, 1996). Defendants' opposition to the motion does not pertain to John B.'s anonymity, but rather to the introduction of evidence pertaining to his medical condition. As such, the motion to proceed anonymously is granted, and the prejudice issue will be addressed in the context of the motion to strike, *infra*.

## III. *The Motion to Strike is Denied*

 Finally, defendants have cross-moved to strike all references to HIV/AIDS in the PCC [7] pursuant to Rules 8(a) and 12(f), on the grounds that HIV is immaterial to the plaintiffs' claims, and unduly prejudicial to the defendants.

 Motions to strike are disfavored, and should be granted only if "there is a strong reason to do so." *Lipsky v. Commonwealth United Corporation*, 551 F.2d 887, 893 (2d Cir.1976). To prevail in such a motion, defendants must demonstrate that "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Koch v. Dwyer*, No. 98 Civ. 5519(RPP), 2000 WL 1458803, *1 (S.D.N.Y. Sept. 29, 2000).

Although there is no allegation that the plaintiffs fear arrest due to their HIV status, HIV is nonetheless central to their claims. This case arises out of the inevitable clash between harm-reduction and criminalization approaches to drug use in New York City. The essence of the plaintiffs' argument is that they are being targeted for arrest for participating in state-authorized needle exchange programs, which were specifically designed to minimize risk behaviors associated with the contraction and transmission of blood-borne diseases such as HIV. A discussion of HIV is crucial to interpreting Public Health Law § 3381, which allowed the Public Health Commissioner to establish needle exchange programs under an exception to the Penal Law, and imperative to supporting the claim of irreparable harm to the putative plaintiff class. In short, the PCC's references to HIV/AIDS are material to the plaintiffs' claims.

Defendants fear that reference to HIV will distract the jury and create prejudicial sympathy for the plaintiffs for reasons wholly apart from defendants' allegedly unlawful acts. *See Burger v. Health In-*

---

7. Specifically, defendants seek to strike paragraphs 2, 23–42, 49–52, 56–59, 61, 65 (first clause), 68, 72, 111 (second clause), 133, 135, 136 (last two sentences), 148, and 149 of the PCC, as well as Exhibits A, B, F, G, I and K attached thereto.

*surance Plan of Greater New York,* 684 F.Supp. 46, 53 (S.D.N.Y.1988). It is unclear that John B.'s HIV-positive status would prejudice the defendants by creating sympathy for him. *See, e.g., Patient v. Corbin,* 37 F.Supp.2d 433, 434 (E.D.Va. 1998) ("Being HIV positive carries a significant stigma in many parts of today's society."). As the enumerated paragraphs of the PCC pertaining to HIV are highly material to the plaintiffs' claims, the defendants' concern about the jury will be better addressed through appropriate applications at a later stage in this litigation.

The motion to strike is denied.

### Conclusion

For the foregoing reasons, the motions to amend the complaint and for John B. to proceed anonymously are granted, and the cross-motion to strike is denied.

It is so ordered.