## GRAVES et al. v. CAMBRIA STEEL CO. et al.

(District Court, S. D. New York. May 9, 1924.)

1. **Monopolies** ⊜⇒24(1)—**Only suits for injunctive relief may be brought under Clayton Act, § 16.**

Clayton Act, § 16 (Comp. St. 8835o), provides only for suits for injunctive relief against threatened loss or damage by a violation of the anti-trust laws.

2. **Courts** ⊜⇒274—**Stockholders' suit held not one under anti-trust laws.**

Suit by minority stockholders to set aside a transfer of property by the corporation, under control of a majority stockholder, is one to enforce rights under the charter contract and the fact that the transfer is alleged to have been in violation of the anti-trust laws does not make it one under such laws, which, under Clayton Act, § 12 (Comp. St. § 8835k), may be brought in a district other than that of which defendant is an inhabitant.

In Equity. Suit by Edward B. Graves and others against the Cambria Steel Company and others. On motion to quash subpœna served on the Bethlehem Steel Company, defendant. Granted.

Motion to quash a subpœna served on the Bethlehem Steel Company, a Pennsylvania corporation. The plaintiffs are minority stockholders of the Cambria Steel Company, a Pennsylvania corporation, and none of them citizens of New York. The bill in substance alleges that the Midvale Steel & Ordinance Company, having got 97 per cent. of the shares of the Cambria Company stock, fraudulently agreed with the Bethlehem Steel Company to convey to that company the assets of the Cambria Company for an inadequate consideration. This the Midvale Company could do because of its control of the Cambria Company's stock, and this it carried out, ratifying the transfer by the same means. It seeks to unravel the transaction and restore to the Cambria Company its assets so taken, and speaks in the right of that company itself. In the course of the bill (article 89), and as one of many reasons for the illegality of the transfer, the pleader alleges that the Bethlehem Company and the Cambria Company were competing manufacturers, and that their consolidation through the transfer was in violation of the anti-trust laws.

Graves, Miles & Yawger, of New York City (Arthur C. Graves, of New York City, of counsel), for complainants.

Cravath, Henderson & De Gersdorff, of New York City, for defendant Bethlehem Steel Co.

LEARNED HAND, District Judge (after stating the facts as above). At the hearing I disposed of the motion so far as the bill rests upon diverse citizenship. As neither the plaintiffs nor the defendant is an "inhabitant" of this district, the bill will not lie under section 51 of the Judicial Code (Comp. St. § 1033).

[1] The plaintiffs urge that it is a bill under section 16 of the Clayton Act (Comp. St. § 8835o), and will therefore lie under section 12 of that act (Comp. St. § 8835k). If so, it must be a suit for "injunctive relief * * * against threatened loss or damage by a violation of the anti-trust laws." That is the sole question here. Judged by the prayer, it is nothing of the sort; it asks a declaration that the contract of transfer be declared void, that the Cambria Company be declared

still in existence, that a receiver be appointed, and that the Bethlehem Company reconvey and account. The prayer is not in general controlling, but when the question is of the object of the suit, as it is in the case at bar, it is hard to know where else to look.

[2] Let me, however, assume that I should look beyond the prayer, and to the structure of the bill. The wrong complained of is not one for which the Cambria Company could have sued at law under section 7 of the Sherman Act (Comp. St § 8829). There might be a minority shareholders' suit based upon such a wrong, if, for example, the officers or majority shareholders collusively refused to prosecute for injuries done to the corporation's business by competitors. But this is not such a one, because, if the Cambria Company sued at law, it could show no injury. The sale of the assets was made with its consent, and that consent was no less real because it depended upon a vote of the majority shareholder who was acting in collusion with the monopolist, the Bethlehem Company.

It might be argued that section 16 of the Clayton Act was meant to cover cases where there was no legal wrong; that the words "loss or damage" in that section meant something different from the same words in section 7 of the Sherman Act; that they included any injury which a victim of monopoly might suffer. Even then I think it open to doubt whether any wrong can be said to have been done to the Cambria Company, either as a corporate entity or as a group of shareholders, and whether the case can properly be said to speak in the right of the corporation, though, of course, it must be a party. In such cases as these the wrong is rather suffered by those shareholders whose rights secured under the charter have been violated. The law allows them to restore the status quo ante, specifically performing the charter compact, as it were, but it is difficult to spell out any wrong to the group as a whole. However, all such considerations are irrelevant, because from no angle can section 16 of the Clayton Act be considered to apply, whether we consider the case as a wrong to the corporation or to the minority. The purpose of section 16 of the Clayton Act certainly was to fill a hiatus left in the Sherman Act, under which the courts had held that private suits, as distinct from private actions, did not lie. When Congress came to amend that situation, they expressly limited the equitable relief to injunctions for threatened loss and damage. That was language apt, and apt only, to answer the case of a threatened multiplicity of torts at law. With the knowledge before it of the prior attitude of the courts toward the statute, there can be no question that the words were used in the conventional sense which tradition would impute to them.

The suit at bar, whatever else it is, is not a suit for an injunction; indeed, it is really a suit for the dissolution of a monopoly pro tanto. I cannot suppose that any one would argue that a private suit for dissolution would lie under section 16 of the Clayton Act. It is clear that article 89 of the bill was inserted with no such idea in mind. If the transfer was unlawful and violated the charter, every shareholder had the right to prevent it. He could do so, not because he or the corporation was damaged personally, as the victim of a conspiracy un-

der the Sherman Act, but because it was implicit in the charter that the assets should not be unlawfully diverted. That was the purpose of the article, which cannot now be stretched to transform the bill into one for equitable relief under the Sherman Act.

Motion granted to quash writ.