**UNITED STATES of America,
Plaintiff,**

v.

**MANUFACTURERS HANOVER TRUST
CO. and H. Teichman, Defendants.**

United States District Court
S. D. New York.
May 26, 1964.

Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, for the United States; John R. Horan, Asst. U. S. Atty., of counsel.

Simpson, Thacher & Bartlett, New York City, for defendant Manufacturers Hanover Trust Co.; Lawrence M. McKenna, New York City, of counsel.

Irwin Isaacs, New York City, for defendant H. Teichman.

WYATT, District Judge.

This is a motion by the government, plaintiff here, for summary judgment in its favor against both defendants (Fed. R.Civ.P. 56(a)).

The action is based on endorsements by the two defendants of a series of 15 checks, each for $64.70, drawn by the Regional Disbursing Officer of the Treasury Department in 1955 and 1956 and which directed the Treasurer of the United States through the Federal Reserve Bank of New York (the "Federal Reserve") to pay the amounts of the checks to the order of Edward E. Scott. The checks were social security payments and were sent through the mail addressed to the payee Scott at 215 West 109 Street, New York 25, New York. In fact, Scott had died on May 27, 1954 before any of the checks arrived but his name as endorser was without authority signed by his widow and turned over to defendant Teichman in payment for merchandise.

Defendant Teichman endorsed the checks to defendant Manufacturers Hanover Trust Company (the "Bank"), which in turn endorsed the checks, presented them to the Federal Reserve and was paid their face amounts. The first check in the series was presented by the Bank and paid by the Federal Reserve on January 11, 1955. The last check in the series was presented by the Bank and paid by the Federal Reserve on September 6, 1956.

Neither the Bank nor Teichman had any knowledge that Scott was dead and his signatures unauthorized.

It does not appear when the government learned of the death of Scott but such knowledge was obtained by July 6, 1959. Investigation was then made. The widow admitted signing the name of her deceased husband to the checks and agreed to make restitution.

Under date of November 13, 1959 the government gave written notice to the Bank of its claim against the Bank by reason of what the government called the "forged endorsements" of the payee Scott. No such notice was given by the government to Teichman.

This action was commenced on November 13, 1963.

The jurisdiction of the Court is under 28 U.S.C. § 1345.

The aggregate of the checks in suit is $970.50 against which the government has credited partial restitution of $270.-90 by the widow; the government asks judgment for the balance of $699.60.

In its answer the Bank pleaded laches and the statute of limitations as defenses against the government's claim and also asserted a cross-claim against defendant Teichman based on the prior endorsements of the checks by Teichman. Fed. R.Civ.P. 13(g).

In his answer to the complaint and to the cross-claim defendant Teichman pleaded laches and the statute of limitations as defenses against the government's claim and against the Bank's claim.

■ There is no genuine issue as to any material fact. A suggestion is made for the defendants that proof of the death of Scott is lacking and hence a failure of proof that his signatures were unauthorized. Whether this suggestion could ever be taken seriously, it cannot survive judicial notice taken by this Court that a certificate of death on file in the bureau of Records and Statistics (Borough of Manhattan) of the Department of Health of the City of New York shows that an Edward Scott of 215 West 109 Street died in St. Luke's Hospital on May 27, 1954, leaving a widow Mary.

Clearly the government's right to summary judgment depends solely on whether the action is timely brought.

The limitation period on actions such as this has been prescribed by Congress in 31 U.S.C. § 129. Under that section, no action can be brought by the United States on a forged endorsement later than six years from the presentation of the check to the drawee for payment *unless* within such six year period "written notice" is given to the endorser "of a claim on account of such liability".

■ Since no notice was given to defendant Teichman the action as to him is not timely brought, the government's motion as to him must be denied and summary judgment must be granted in favor of defendant Teichman dismissing the action as to him. Local 33, Int. Hod Carriers, etc. v. Mason Tenders District Council etc., 291 F.2d 496, 505 (2d Cir. 1961); 6 Moore's Federal Practice (2d ed.) 2088–89.

Since "written notice" was given to the Bank by the government on or about November 13, 1959—less than six years after presentation for payment of the first check of the series—the Bank properly concedes that the action is timely brought against it so far as the limitation period of 31 U.S.C. § 129 is concerned.

■ It is insisted for the Bank, however, that the government is barred by laches. Such an argument cannot be

entertained in the face of a provision by the Congress of a specific period within which this action may be brought. There is no room for the defense of laches (in any event a defense normally against equitable causes of action only) where Congress has fixed a period within which an action may be brought. Cases such as United States v. National City Bank of New York, 28 F.Supp. 144 (S.D.N.Y. 1939) are no longer of value as precedents because they were decided before the enactment of 31 U.S.C. § 129.

■■ Historically laches is a defense in equity and depends not so much on the existence of delay or the fact of delay, as on the effect of delay. Where delay in asserting a claim had caused defendant to be prejudiced thereby, the defense was allowed in equity as an extension of the old maxim: "he who seeks equity must do equity". Prior to the enactment of 31 U.S.C. § 129 there was no limitation of time within which the government could sue on a forged endorsement and only the intermittent application of the equitable defense of laches. The reasons for the passage of 31 U.S.C. § 129 were explained in House Report No. 101, February 12, 1946 (1946 U.S.Code Cong. Service p. 1071) as follows:

"The enactment of the present legislation (H. R. 129) will afford those assisting the United States in the satisfaction of its obligations by cashing Government checks, protection of a nature which the Government itself receives under existing law with respect to claims against it. Many of the liabilities from which relief is sought through the enactment of this bill arise from the comprehensive nature of the Government's right to sue on instruments bearing forged or unauthorized endorsements. In recent years large numbers of Government checks have issued to payees who after the termination of the war will return to or move to localities other than where the checks were cashed. With the passing of time such payees will become increasingly difficult to locate. Likewise, merchants and others through whom the checks passed may either no longer be available to the banks or for various other reasons may be in such position as to render whatever right of redress the banks may have against such individuals of no practical value. Hence, when called upon to make good checks found to have been negotiated upon forged or unauthorized endorsements, the full financial consequences of the refund required on such checks will fall on the banks and other permanently established institutions. When it is considered that the policy of terminating liability on claims by the Government against individuals and corporations has been established in the tax laws—26 U.S.C. 275–277— and as to sureties on the bonds of disbursing officers (usually corporate sureties receiving commensurate compensation for the risk of loss involved)—6 U.S.C. 5—the committee feel it is fair and reasonable that such policy be extended to relieve banks, merchants and others from liabilities incidentally assumed in the encashment of Government checks or warrants."

After the enactment of 31 U.S.C. § 129 there could no longer be any application to the government in any instance of the equitable defense of laches. Either the government's claim was timely brought or not, depending solely on compliance by the government with 31 U.S.C. § 129.

■ Even if there were room here for the defense of laches, it would not be available on the facts. The government gave notice to the Bank as soon as the forgery became known. The Bank could then have given notice to Teichman. As already pointed out, there is no basis for suggesting a lack of proof of Scott's death; the certificate of his death was a public record easily available to the Bank.

The government's motion for summary judgment against the Bank must be granted. The Clerk is directed to

enter judgment in favor of the United States of America against defendant Manufacturers Hanover Trust Company for the amount demanded in the complaint. This amount should be calculated as the face amount of each check plus interest thereon at 6% per annum from the date of payment to Manufacturers Hanover Trust Company, less the $270.90 received as restitution and with appropriate adjustment in interest in respect of this restitution amount.

The motion of plaintiff for summary judgment in its favor against defendant H. Teichman is denied and the Clerk is directed to enter judgment in favor of defendant H. Teichman dismissing the action brought by plaintiff against him.