**FUCHS SUGARS & SYRUPS, INC., and Francis J. Prael, doing business as Lewis & Company, Plaintiffs,**

v.

**AMSTAR CORPORATION, Defendant.**

No. 74 Civ. 2945.

United States District Court, S. D. New York.

Oct. 8, 1975.

LeBoeuf, Lamb, Leiby & MacRae, New York City, for plaintiffs; H. Richard Wachtel, William G. Primps, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendant; William E. Willis, James H. Carter, William M. Dallas, Jr., New York City, of counsel.

ROBERT J. WARD, District Judge.

Defendant Amstar Corporation ("Amstar") moves pursuant to Rules 12(b) (6) and 12(f), Fed.R.Civ.P., for an order dismissing Count II of the amended complaint in this action and striking certain portions of that pleading. For the reasons hereinafter stated, the motion is denied.

Plaintiffs are two among several "general sugar brokers" whose services in distributing sugar products were terminated on March 30, 1974 by Amstar, a leading manufacturer of refined cane sugar. The complaint charges violations of §§ 1 and 2 of the Sherman Anti-trust Act, 15 U.S.C. §§ 1 and 2, and § 7 of the Clayton Act, 15 U.S.C. § 18, in addition to raising certain state law claims.

Rule 12(f), Fed.R.Civ.P., under which defendant moves, provides:

> Motion to Strike. Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a 'party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Amstar argues that references in the amended complaint to the 1934 decree of this Court in *United States v. The Sugar Institute* are immaterial and must be stricken.

Modern federal practice permits wide latitude in pleading. *Nagler v. Admiral Corp.*, 248 F.2d 319, 322–25 (2d Cir. 1957). Motions to strike are not favored and are granted only if the challenged matter clearly has no bearing upon the issues of the action. 2 A. J. Moore, Federal Practice ¶ 12.21[2], at 2429 (2d ed. 1975).

Plaintiffs maintain that they do not seek to enforce the 1934 decree but instead refer to it as indicative of Amstar's monopolistic intentions. Facts bearing upon defendant's "course of conduct" may carry weight. In any event, "[a]llegations in a complaint which supply background or historical material or which are of an evidentiary quality will

not be stricken unless unduly prejudicial to defendant." *South Side Drive-In Co. v. Warner Bros. Pictures Dist. Corp.*, 30 F.R.D. 32, 34 (E.D.Pa.1962).

> Even if we were satisfied that the matter in the complaint[s] relating to the Government action was immaterial, it is settled law in this District that "immaterial allegations, and likewise verbose, conclusory, or evidentiary allegations, need not be stricken unless their presence in the complaint prejudices the defendant." [citations omitted] In the last analysis, the complaint[s] [is] confined to matters of public record.

*Federated Department Stores, Inc. v. Grinnell Corp.*, 287 F.Supp. 744, 747 (S. D.N.Y.1968).

■■ As part of the historical context of defendant's dealings, the mention of the decree is no more prejudicial than much of the rest of the amended complaint. At this still early stage of the litigation, far from the jury, the pleadings are best left undisturbed. Determinations as to the admissibility of evidence will be made at trial. *See Federated Department Stores, Inc. v. Grinnell Corp., supra*, at 748–49.

The second portion of Amstar's motion is directed to plaintiffs' claim under § 7 of the Clayton Act. Defendant asserts that divestiture is not available as a remedy for private parties.

Plaintiffs' entitlement to the relief of divestiture presents a difficult and unsettled question. There is authority on both sides;* the most recent and authoritative pronouncements have issued from the Ninth Circuit in *International Telephone and Telegraph Corp. v. General Telephone & Electronics Corp.*, 518 F.2d 913 (9th Cir. 1975) ("*ITT*") and the Third Circuit, *NBO Industries Treadway Companies, Inc. v. Brunswick Corp.*, 523 F.2d 262 (3d Cir. decided Aug. 29, 1975) ("*NBO*").

The Ninth Circuit has held that private parties may not obtain divestiture under § 7 while the Third Circuit, *in dicta*, indicates that this remedy is available. Recent law review commentary, Note, "The Use of Divestiture in Private Antitrust Suits" 43 Geo.Wash.L. Rev. 261 (1974), as well as the Antitrust Division, United States Department of Justice, Brief for the United States as *Amicus Curiae*, submitted in *Calnetics v. Volkswagen of America*, Civil Nos. 73–1953, 73–1958 (9th Cir. 1973), have supported such relief.

In their efforts to resolve this problem, the courts have entered the quagmire of legislative history. As a consequence, the determination has come to hinge upon the significance and interpretation attached to certain "colloquies" which occurred during the House Hearings on § 16 of the Clayton Act. *ITT* 518 F.2d at 922.

---

* The Third Circuit listed the following authorities:

Cases declining to grant a private divestiture remedy included: *International Tel. & Tel. Corp. v. General Tel. & Electronics Corp.*, 518 F.2d 913 (9th Cir. 1975); *Continental Sec. Co. v. Michigan Cent. R. R.*, 16 F.2d 378 (6th Cir. 1926), cert. denied, 274 U.S. 741, 47 S.Ct. 587, 71 L.Ed. 1320 (1927); *American Commercial Barge Line Co. v. Eastern Gas & Fuel Associates*, 204 F.Supp. 451 (S.D.Ohio 1962); *Graves v. Cambria Steel Co.*, 298 F. 761 (S.D.N.Y.1924) (L. Hand, J.); *Venner v. Pennsylvania Steel Co.*, 250 F. 292 (D.N. J.1918).

Cases suggesting the availability of a private divestiture remedy include: *International Tel. & Tel. Corp. v. General Tel. & Electronics Corp.*, 351 F.Supp. 1153,

1203–11 (D.Hawaii 1972) and *Calnetics Corp. v. Volkswagen of America, Inc.*, 348 F.Supp. 606, 614–17 (C.D.Cal.1972), both of which are reversed on the issue by *International Tel. & Tel. Corp. v. General Tel. & Electronics Corp. supra*; *Credit Bureau Reports, Inc. v. Retail Credit Co.*, 358 F.Supp. 780 (S.D.Tex.1971), aff'd, 476 F.2d 989 (5th Cir. 1973); *Bay Guardian Co. v. Chronicle Publishing Co.*, 340 F.Supp. 76 (N.D.Cal.1972); *Burkhead v. Phillips Petroleum Co.*, 308 F.Supp. 120 (N.D.Cal.1970); *Julius M. Ames Co. v. Bostitch, Inc.*, 240 F.Supp. 521 (S.D.N.Y. 1965); *Bailey's Bakery, Ltd. v. Continental Baking Co.*, 235 F.Supp. 705 (D.Hawaii 1964), aff'd per curiam, 401 F.2d 182 (9th Cir. 1968), cert. denied, 393 U.S. 1086, 89 S.Ct. 874, 21 L.Ed.2d 779 (1969).

Judge Goodwin, of the Ninth Circuit, accorded these exchanges considerable weight and concluded that the House Judiciary Committee did not envision that the phrase "injunctive relief" encompassed dissolution. The Court, acknowledging that this conclusion was based on "circumstantial evidence," then went on to state its belief, "that by disallowing private suits for 'dissolution' Congress also disallowed private 'divestiture' suits." *ITT* 518 F.2d at 922.

If "circumstantial evidence" is to be afforded weight it is worthwhile to observe that in its original form the Senate Bill explicitly provided for Government power to press for total dissolution. The deletion of this section has not been read to suggest the intention to foreclose the relief. "Nothing in the legislative history . . . *suggests* that the failure to authorize a private remedy of divestiture is of any greater significance than the failure to authorize a governmental remedy of divestiture." Note, 43 Geo.Wash.L.Rev., *supra* at 268.

■ The Third Circuit was not persuaded by Judge Goodwin's reasoning and indeed questioned a reliance on 1914 legislative history.

It is quite another question whether legislative history from 1914, strong as it appears, should control the contemporary application of a statute laying down a fundamental national economic policy. This is especially true when the significance of the circumstances to which application is sought were perceived dimly, if at all, at the time of passage. The antitrust laws are of necessity statements of general principle. They must be given meaning in specific applications on a case-by-case basis. It is impossible for a legislature to devise codes so all-encompassing as to predict every case to which the general principle should apply. So, too, with antitrust remedies. There is a danger in permitting the pronouncements of statesmen long deceased to control the contemporary

meaning of statutes which are almost an economic constitution for our complex national economy.

*NBO, supra.* Were definite statements in a final Committee report involved, this argument would be suspect; the Court's function is not to legislate. But, as stated by Justice Jackson:

[T]o select casual statements from floor debates, not always distinguished for candor or accuracy, as a basis for making up our minds what law Congress intended to enact is to substitute ourselves for the Congress in one of its important functions. The Rules of the House and Senate, with the sanction of the Constitution, require three readings of an Act in each House before final enactment. That is intended, I take it, to make sure that each House knows what it is passing and passes what it wants, and that what is enacted was formally reduced to writing. It is the business of Congress to sum up its own debates in its legislation. Moreover, it is only the words of the bill that have presidential approval, where that approval is given. It is not to be supposed that, in signing a bill, the President endorses the whole Congressional Record. For us to undertake to reconstruct an enactment from legislative history is merely to involve the Court in political controversies which are quite proper in the enactment of a bill but should have no place in its interpretation.

*Schwegmann Bros. v. Calvert Corp.,* 341 U.S. 384, 396, 71 S.Ct. 745, 751, 95 L.Ed. 1035 (1951) (concurring opinion).

■ Belaboring inconclusive scraps of legislative history may be less worthwhile than examining the broad aim of the statutory scheme. As the Supreme Court has noted:

[T]he purpose of giving private parties treble-damage and injunctive remedies was not merely to provide private relief, but was to serve as well the high purpose of enforcing the an-

titrust laws. . . . Section 16 should be construed and applied with this purpose in mind, and with the knowledge that the remedy it affords [injunctive relief], like other equitable remedies, is flexible and capable of nice "adjustment and reconciliation between the public interest and private needs as well as between competing private claims." . . . Its availability should be "conditioned by the necessities of the public interest which Congress has sought to protect."

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130–31, 89 S. Ct. 1562, 1580, 23 L.Ed.2d 129 (1969) (citations omitted). The court sitting in equity has traditionally been free to exercise wide latitude in fashioning an appropriate remedy. Having invested the judiciary with the broad power to award "injunctive relief," could the Congress then be thought to have circumscribed that grant without any express admonition to that effect? This Court subscribes to the view that the power to "do equity" is provided in the antitrust laws. Justice Brennan has observed, "[d]ivestiture has been called the most important of the antitrust remedies. It is simple, relatively easy to administer and sure. It should always be in the forefront of a court's mind when a violation of § 7 has been found." *United States v. DuPont & Co.*, 366 U.S. 316, 330–31, 81 S.Ct. 1243, 1252, 6 L.Ed.2d 318 (1961). Accordingly, this Court concludes that divestiture is a potential remedy for private parties injured by violations of the Clayton Act.

■ Lastly, Amstar claims that plaintiffs' action is barred by laches, since the acquisitions of shares of Spreckels Sugar Company stock concluded in 1963. However, laches acts as a time bar only when a plaintiff's delay has had a prejudicial effect upon his opponent's defense. *United States v. Man-*

*ufacturers Hanover Trust Co.*, 229 F. Supp. 544, 546 (S.D.N.Y.1964). There is no indication of such an impact here.

■ Whether a legal statute of limitations were in effect or the doctrine of laches applied, no claim could arise until an injury took place. The time when a cause of action accrues under the antitrust laws is a matter of federal law. 1 A. J. Moore, Federal Practice ¶ 0.323.2, at 3732 (2d ed. 1974).

As stated by the Supreme Court in *United States v. DuPont & Co.*, 353 U.S. 586, 597, 77 S.Ct. 872, 879, 1 L.Ed.2d 1057 (1956):

The Clayton Act was intended to supplement the Sherman Act. Its aim was primarily to arrest apprehended consequences of intercorporate relationships before those relationships could work their evil, which may be at or any time after the acquisition, depending upon the circumstances of the particular case.

Defendant's reliance upon the Ninth Circuit's treatment of the laches question presented by the *ITT* case seems misplaced. There, the court indicated, "[t]he most relevant message we can glean from *DuPont* is its basic teaching that an antitrust violation may occur long after a vertical relationship arises." *ITT* 518 F.2d at 928.

■ The injury on which plaintiffs base their suit was purportedly sustained in March of 1974 when they were terminated as Amstar's brokers. This action was commenced in July, 1974 and the amended complaint was filed a year later. Consequently, no time bar forecloses plaintiffs' suit.

For the reasons stated, Amstar's motion to strike certain portions of the pleadings and to dismiss Count II of the amended complaint is denied.

It is so ordered.