17-3502-cv
GEOMC Co., Ltd. v. Calmare Therapeutics Inc.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2018

Argued:  September 11, 2018          Decided: March 12, 2019

Docket No. 17-3502-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GEOMC CO., LTD.,

Plaintiff-Counter-Defendant-Appellee,

v.

CALMARE THERAPEUTICS INCORPORATED,

Defendant-Counter-Claimant-Appellant.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before:  NEWMAN, JACOBS, and POOLER, Circuit Judges.

Appeal from the Sept. 29, 2017, judgment of the District Court for the District of Connecticut (Victor A. Bolden, District Judge), requiring Calmare Therapeutics, Inc. ("Calmare") to pay $10,352,170.41 to GEOMC Co., Ltd.

---

[1] The Clerk is directed to amend the official caption  as above.

("GEOMC") after a bench trial of a contract dispute concerning sales of medical devices for managing pain. Most of the claims on appeal have been adjudicated in a summary order filed this day, which vacates the judgment and remands. This opinion affirms the District Court's ruling striking two affirmative defenses and five counterclaims.

> William Feldman, Haynes and Boone, LLP, New York, NY for Defendant-Counter-Claimant-Appellant Calmare Therapeutics, Inc.
>
> Kristen B. Weil, (Richard M. Zuckerman, on the brief), Dentons US LLP, New York, NY for Plaintiff-Counter-Defendant-Appellee GEOMC Co., Ltd.

JON O. NEWMAN, Circuit Judge:

This appeal in complicated litigation concerning a contract dispute merits an opinion to clarify the standards for pleading affirmative defenses and granting a motion to strike them, *see* Fed. R. Civ. P. 12(f), and for presenting and challenging new counterclaims filed, or sought to be filed, in a responsive pleading to a second amended complaint, *see* Fed. R. Civ. P. 15(a). Other matters raised by the appeal have been adjudicated in a summary order filed this day.

Defendant-Appellant Calmare Therapeutics, Inc. ("Calmare"), a Delaware corporation, appeals from the Sept. 29, 2017, judgment of the District Court for the District of Connecticut (Victor A. Bolden, District Judge) in favor of Plaintiff-

Appellee GEOMC Co., Ltd. ("GEOMC"), a South Korean corporation, entered after a bench trial. The litigation concerns a dispute arising from sales of medical devices for managing pain.

## Background

Consideration of the District Court's ruling striking two of Calmare's affirmative defenses and five of its counterclaims requires explication of the procedural context of the ruling. GEOMC filed an amended complaint in October 2014, asserting five causes of action. Calmare filed an answer in December 2014, asserting nine affirmative defenses, but no counterclaims. In September 2015, almost a year later, Calmare sought leave to amend its answer to the amended complaint to add several additional affirmative defenses and several counterclaims. GEOMC opposed Calmare's request and at the same time sought leave to amend its amended complaint by adding a sixth cause of action.

Confronting an unusual situation, Judge Bolden fashioned an unusual response. On June 13, 2016, he denied Calmare's motion for leave to amend its answer to GEOMC's amended complaint, granted GEOMC's motion for leave to file a second amended complaint, and permitted Calmare to file an amended answer to the second amended complaint "subject to [GEOMC's] ability to move, under Rule 12(f), to strike material in [Calmare's] answer that [GEOMC] believes exceeds the scope of permissible amendment." Dist. Ct. Dkt. ECF Nos. 135, 136. In effect, he authorized the Plaintiff to use a motion to strike under Rule 12(f) of the

3

Federal Rules of Civil Procedure to raise whatever issues it would have raised in opposition to the Defendant's motion to amend its answer under Rule 15(a)(2).[2]

On June 15, 2016, GEOMC filed a second amended complaint, adding, as a sixth cause of action, a claim for breach of contract. On June 30, 2016, Calmare filed an answer to the second amended complaint, adding six affirmative defenses and six counterclaims. On July 25, 2016, GEOMC moved to strike all of Calmare's six new affirmative defenses and five of its six new counterclaims. On Oct. 19, 2016, the District Court granted in part and denied in part GEOMC's motion to strike. The Court denied the motion with respect to four affirmative defenses, and, pertinent to the pending appeal, struck Calmare's sixth and seventh affirmative defenses and five counterclaims. *See GEOMC Co. v. Calmare Therapeutics, Inc.*, No. 3:14-CV-01222 (VAB), 2016 WL 6122930, at *5-6 (D. Conn. Oct. 19, 2016). Calmare seeks review of that ruling.

Discussion

I. Striking Calmare's Affirmative Defenses

The standards for determining the proper pleading of an affirmative defense and for granting a motion to strike an affirmative defense have had a curious

---

[2] The Court also ruled that if Calmare wished to seek leave to file a third-party complaint, it "must submit a proposed third-party complaint that does not contain any counterclaims against [GEOMC]" plus a supporting memorandum. Dist. Ct. Dkt. ECF No. 136.

evolution in this Circuit.[3] Uncertainty has sometimes resulted from the fact that district courts, which have made most of the rulings on sufficiency of affirmative defenses and motions to strike them, have not always distinguished between affirmative defenses in a timely filed answer and those later filed, either with or without court permission to amend an answer, especially those filed in late stages of litigation. Rule 12(a)(1)(A)(i) requires an answer to be filed within 21 days after service of a summons and complaint. Rule 15(a)(1)(A) provides that a party is entitled to amend its answer 21 days after serving it, Rule 15(a)(2) permits an amended answer thereafter with the opposing party's consent or leave of court, which should be "freely give[n] . . . when justice so requires," and Rule 15(a)(3) provides: "Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."

---

[3] The standards appear never to have been considered by the Supreme Court. In two original jurisdiction cases, the Court struck an affirmative defense, *see Washington v. Oregon*, 52 S. Ct. 456 (1932), and *Missouri v. Chicago, Burlington, & Quincy R.R. Co.*, 241 U.S. 533 (1916), but did not discuss the standard for granting a motion to strike an affirmative defense.

The starting point for analysis is Rule 12(f), which provides that a court may strike "from a pleading" any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[4] After the adoption of the Federal Rules of Civil Procedure in 1938, the first time we considered the propriety of striking an affirmative defense appears to be *United States v. Oswego Falls Corp.*, 113 F.2d 322 (2d Cir. 1940). We there ruled that a defense, apparently timely filed, was properly stricken because no facts were pleaded to support the defense. *See id.* at 325. Shortly thereafter, we ruled, apparently for the first time, that an affirmative defense was properly stricken because it was legally insufficient. *See De Pasquale v. Williams-Bauer Corp.*, 151 F.2d 578, 580 (2d Cir. 1945); *see also Schram v. Schwartz*, 68 F.2d 699, 702 (2d Cir. 1934) (same; pre-Rules decision).

Not until many years later did we endeavor to expand, even briefly, on the pleading standard necessary for an affirmative defense to survive a motion to strike. In *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935 (2d Cir. 1984) ("*Salcer*"), *vacated on other grounds*, 478 U.S. 1015 (1986), we stated that a motion to strike an affirmative defense, apparently timely filed, will not be

---

[4] Rule 12(f) authorizes a court to act "on its own" or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(1), (2).

granted unless "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Id*. at 939 (internal quotation marks omitted). This formulation expansively phrased the pleading standard with the wording then used by the Supreme Court in *Conley v. Gibson*, 355 U.S. 41 (1957), for testing the sufficiency of a complaint: "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46. That wording, the Court ruled in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "is best forgotten," *id*. at 563, and was replaced with a "plausibility standard," *id*. at 560; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (same).

Fifteen years after *Salcer*, a District Court in this Circuit purported to extract from that opinion a three-part test for striking a timely filed affirmative defense:

> "In order to prevail on a motion to strike [an affirmative defense], a plaintiff must show that: (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense."

*S.E.C. v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999). This formulation divided *Salcer*'s reference to facts into two factors, one concerned with facts,[5] and the other concerned with law. The *McCaskey* formulation also added a third factor, prejudice to the plaintiff, a factor not mentioned in *Salcer*.

After *McCaskey*, district courts in this Circuit repeated the three *McCaskey* factors, initially in identical wording and later with only slight variations, in a series of decisions, set out in the margin,[6] culminating in *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425-26 (S.D.N.Y. 2010).

---

[5] The *McCaskey* formulation converted the *Salcer* wording of no "state of the facts which could be proved" to support the defense into "no question of fact" for such purpose. The *McCaskey* formulation suggests a *disputed* fact, but perhaps a legally sufficient fact (or set of facts) was meant.

[6] The three factors listed in *McCaskey* were repeated in identical words in *S.E.C. v. KPMG LLP*, No. 03 Civ. 671 (DLC), 2003 WL 21976733, at *2 (S.D.N.Y. Aug. 20, 2003), citing *McCaskey*. The three factors listed in *KPMG* were repeated, in almost the exact words, in *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate. Inc.*, No. 04 Civ. 4099 (DLC), 2005 WL 1164073, at *3 (S.D.N.Y. May 18, 2005), citing *KPMG. De Beers*, where the affirmative defenses were filed beyond 21 days after the complaint, changed the wording of the first two factors from "there is" to "there must be," inserted "substantial" before "question of law" in the second factor, changed the wording of the third factor from "would be" to "must be," and inserted "the" before "inclusion." With these slight changes, the three factors were repeated in identical words in *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 111 (S.D.N.Y. 2005), citing *De Beers*, and were repeated in identical words in *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425-26 (S.D.N.Y. 2010), quoting from *Specialty Minerals*. The affirmative defenses in *Coach* were filed more than 21 days after the complaint, but apparently not pursuant to leave to file under Rule 15.

In the pending appeal, the District Court cited *Coach* for the proposition that "' [i]f a court determines that a defense is legally insufficient, the court must next determine whether inclusion of the defense would prejudice the plaintiff.'" Special App'x 5 (quoting *Coach*, 756 F. Supp. 2d at 425-26). The District Court also stated the three relevant factors in terms somewhat different from those used in the *McCaskey* formulation or in *Coach*. The Court said that the party moving to strike a defense

> "ordinarily must show that '(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the issues in the case; and (3) permitting the allegations to stand would result in prejudice to the movant.'"

Special App'x 4 (quoting *Tucker v. American International Group, Inc.*, 936 F. Supp. 2d 1, 16 (D. Conn. 2013)). The three *Tucker* factors can be traced back through a series of decisions, set out in the margin,[7] that did not concern a motion to strike

---

[7] *Tucker* quoted its wording of three factors from *Impulsive Music v. Pomodoro Grill, Inc.*, No. 08-CV-6293, 2008 WL 4998474, at *2 (W.D.N.Y. 2008), which had quoted them from *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001). *Roe* quoted them from *Koch v. Dwyer*, No. 98 Civ. 5519(RPP), 2000 WL 1458803, at *1 (S.D.N.Y. Sept. 29, 2000), adding an "s" to "allegation" in the first factor. *Koch*, which concerned a motion to strike allegations of a complaint, not affirmative defenses, drew the formulation of the three *Tucker* factors from *Wine Markets International, Inc. v. Bass*, 177 F.R.D. 128, 133 (E.D.N.Y. 1998), which concerned a motion to strike immaterial and impertinent matter from a complaint. *Wine Markets* drew the *Tucker* factors from *Laverpool v. New York City Transit Authority*, 760 F. Supp. 1046, 1060-61 (E.D.N.Y. 1991), which concerned a motion to strike immaterial and impertinent matter from a complaint. *Laverpool* had drawn the three factors from three different sources: *Lipsky v. Commonwealth United Corp.*, 551 F.2d

9

affirmative defenses, but concerned a motion to strike either an allegation of a complaint or material in a pleading.

Before adjudicating the propriety of the District Court's striking two of Calmare's affirmative defenses, we take this occasion to clarify the factors relevant to striking an affirmative defense. To avoid having district courts continue to repeat the three-factor formulation as worded in *McCaskey*, we consider each of those factors in turn.

Whether the first of the *McCaskey* factors should be reworded in light of *Twombly*, *i.e.*, whether *Twombly* applies to the pleading of affirmative defenses, is an issue that has divided the many district courts[8] and commentators that have considered it. Three comprehensive articles take three different approaches. One

---

887, 893 (2d Cir. 1976) (reference to certain evidence in pleading was immaterial because that evidence would not be admissible), *Fuchs Sugars & Syrups, Inc. v. Amstar Corp.*, 402 F. Supp. 636, 637-38 (S.D.N.Y. 1975) (motion to strike references in amended complaint as immaterial denied for lack of prejudice), and 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 683-85 (2d ed. 1990) (allegations would result in prejudice to movant).

[8] *Compare, e.g., Perez v. Gordon & Wong Law Group, P.C.*, No. 11-CV-03323-LHK, 2012 WL 1029425, at *6-8 (N.D. Cal. Mar. 26, 2012) (*Twombly* applicable to affirmative defenses), *HCRI TRS Acquirer, LLC v. Iwer*, 708 F. Supp. 2d 687, 691 (N.D. Ohio 2010) (same), *and Tracy v. NVR, Inc.*, No. 04-CV-6541L, 2009 WL 3153150, at *7 (W.D.N.Y. Sept. 30, 2009) (same), *with e.g., Leviton Manufacturing Co. v. Pass & Seymour, Inc.*, 264 F. Supp. 3d 421, 427 (E.D.N.Y. 2017) (*Twombly* not applicable to pleading affirmative defenses), *Hon Hai Precision Industry Co. v. Wi-LAN, Inc.*, No. 12 Civ. 7900(SAS), 2013 WL 2322675, at *9 (S.D.N.Y. May 28, 2013) (same), *and Lane v. Page*, 272 F.R.D. 581, 588-97 (D.N.M. 2011) (same).

article favors applying *Twombly* to affirmative defenses. *See* Joseph A. Seiner,

*Plausibility Beyond the Complaint*, 53 Wm. & Mary L. Rev. 987 (2012). One opposes

applying *Twombly* to affirmative defenses. *See* Justin Rand, *Tightening Twiqbal: Why*

*Plausibility Must Be Confined to the Complaint*, 9 Fed. Cts. L. Rev. 79 (2016). One

proposes a "middle-ground approach." *See* Note, Nathan Pysno, *Should Twombly*

*and Iqbal Apply to Affirmative Defenses?*, 64 Vand. L. Rev. 1633, 1670 (2011); *see also*

2 Moore's Federal Practice § 12.37[4] (3d ed. 2018) ("If a plaintiff files a motion to

strike one or more defenses, the better view is that the plausibility standard of

*Twombly* does not apply in judging the adequacy of the defendant's pleaded

defenses, although there is some authority to the contrary." (footnote omitted)); 5

Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1274 (3d ed.

2018) (taking no position on whether *Twombly* applies to pleading affirmative

defenses).

We conclude that the plausibility standard of *Twombly* applies to

determining the sufficiency of all pleadings, including the pleading of an

affirmative defense, but with recognition that, as the Supreme Court explained in

*Iqbal*, applying the plausibility standard to any pleading is a "context-specific"

task. 556 U.S. at 679.[9] The Court described the context of *Iqbal* as one "where we are impelled to give real content to the concept of qualified immunity for high-level officials who must be neither deterred nor detracted from the vigorous performance of their duties." 556 U.S. at 686.

The key aspect of the context relevant to the standard for pleading an affirmative defense is that an affirmative defense, rather than a complaint, is at issue. This is relevant to the degree of rigor appropriate for testing the pleading of an affirmative defense. The pleader of a complaint has the entire time of the relevant statute of limitations to gather facts necessary to satisfy the plausibility standard. By contrast, the pleader of an affirmative defense has only the 21-day interval to respond to an original complaint, *see* Fed. R. Civ. P. 12(a)(1)(A)(i), the 21-day interval to amend, without court permission, an answer that requires a responsive pleading, *see* Fed. R. Civ. P. 15(a)(1)(B), or the 14-day interval to file a required response to an amended pleading that makes a new claim, *see* Fed. R. Civ. P. 15(a)(3).[10] That aspect of the context matters. In addition, the relevant context

---

[9] The Court described the context of *Iqbal* as one "where we are impelled to give real content to the concept of qualified immunity for high-level officials who must be neither deterred nor detracted from the vigorous performance of their duties." 556 U.S. at 686.

[10] If a plaintiff's amended pleading only amends a claim previously made, the defendant, though obliged to respond, could usually have had the interval between the

12

will be shaped by the nature of the affirmative defense. For example, the facts needed to plead a statute-of-limitations defense will usually be readily available; the facts needed to plead an ultra vires defense, for example, may not be readily known to the defendant, a circumstance warranting a relaxed application of the plausibility standard.

The second factor identified in *McCaskey* needs no revision. There is no dispute that an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims.

Whether the third of the *McCaskey* factors, prejudice, should be a basis for dismissing or opposing the addition of an otherwise valid affirmative defense will normally depend on when the defense is presented. A factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation. A defendant with such a defense is entitled to a full opportunity to assert it and have it adjudicated before a plaintiff may impose liability. *See Lucente v. International Business Machines Corp.*, 310 F.3d 243, 260 (2d Cir. 2002). On the other hand, prejudice may be considered and, in some cases, may be determinative, where a defense is presented

plaintiff's first and amended complaints to amend its original answer to include affirmative defenses.

beyond the normal time limits of the Rules, especially at a late stage in the litigation, and challenged by a motion to dismiss or opposed by opposition to a Rule 15(a) motion. *See Anderson v. National Producing Co.*, 253 F. 2d 834, 838 (2d Cir. 1958) (motion made on eighth day of trial to amend answer to add affirmative defense properly denied).

With these considerations in mind, we consider the District Court's ruling in this case. Granting in part a motion by GEOMC, the District Court struck Calmare's sixth and seventh affirmative defenses asserted in its answer to GEOMC's second amended complaint. The sixth defense alleged that GEOMC's damages were caused by its own negligence; the seventh defense alleged that GEOMC failed to join a necessary party. Although the District Court had permitted Calmare to file this answer, the Court had cautioned that Calmare's answer would be subject to a motion to strike by GEOMC. The Court stated that these defenses "introduce vague allegations regarding the actions of unnamed third parties, raising concerns of both legal sufficiency and prejudice to GEOMC." *GEOMC*, 2016 WL 6122930, at *5.

Striking these two affirmative defenses was within the District Court's discretion. The sixth defense lacked any indication of what conduct by GEOMC or

14

others might have been a defense to the breach of contract claim added by the second amended complaint. The seventh defense lacked any indication of which party needed to be joined or why. Calmare needed to support these defenses with some factual allegations to make them plausible. Moreover, both affirmative defenses were presented at a late stage of the litigation. Although the defenses were presented soon after GEOMC filed its second amended complaint, they were not aimed at the one new cause of action in that complaint but sought to challenge claims made nearly a year earlier in the first amended complaint. Expanding the litigation at that stage would have been prejudicial to GEOMC.

## II. Striking Calmare's Counterclaims

We next turn to the District Court's ruling striking five of Calmare's new counterclaims in its amended answer responding to GEOMC's second amended complaint. Because of the variety of district court rulings, both procedural and substantive, on new counterclaims, we consider both the content of a new counterclaim in an amended answer responding to an amended complaint and the procedures for presenting and challenging such a counterclaim.[11]

---

[11] We have no need to consider Rule 13's distinction between compulsory and permissive counterclaims. *See* Fed. R. Civ. P. 13(a), (b).

As to content, a new counterclaim, like all pleadings, must conform to the pleading requirements of *Twombly* and *Iqbal*. *See* 2 Moore's Federal Practice, § 12.34[1][a] (3d ed. 2018); 6 Wright & Miller § 1407 (3d ed. 2018). The closer question is whether a new counterclaim may respond as broadly as one included in an answer to an original complaint or whether it must respond only to the new allegations of an amended complaint. This is an issue that remains unresolved, like other aspects of asserting amended counterclaims. *See Christians of California, Inc. v. Clive Christian Furniture Ltd.*, No. 13 CIV. 275 (LTS)(JCF), 2014 WL 982889, at *2 (S.D.N.Y. Mar. 11, 2014) ("courts in this Circuit have adopted different approaches"); *Southern New England Telephone Co. v. Global NAPS, Inc.*, No. CIVA 3:04-CV-2075 JCH, 2007 WL 521162, at *1 (D. Conn. Feb. 14, 2007) ("a matter that remains unsettled in the Second Circuit"); *Pereira v. Cogan*, No. 00 CIV. 619 (RWS), 2002 WL 1822928, at *2 (S.D.N.Y. Aug. 7, 2002); 3 Moore's Federal Practice §§ 13.30[4] , 15.17[6] (3d ed. 2018) ("case law . . . all over the map").[12]

---

[12] Four approaches to the issue have been identified for new counterclaims asserted in an amended answer that responds to an amended complaint. A so-called "narrow approach" 3 Moore's Federal Practice § 15.17[6], suggests that a new counterclaim "had to be tailored specifically to address the amendments in the complaint," *id*. A so-called "permissive approach," *id*. suggests that new counterclaims may be included in an amended answer "without leave of court, regardless of the nature of the amended complaint," *id*. A so-called "moderate approach," *id*., suggests that new counterclaims may be filed "without seeking permission if the amended complaint

We think resolution of this issue depends on how far into the litigation the new counterclaim is asserted. If an amended answer with a new counterclaim is presented at an early stage of the litigation, the new counterclaim may normally be as broad as those filed in response to an original complaint. At a late stage of the litigation, however, a new counterclaim that raises issues beyond the scope of the new claims made in the most recent amended complaint will usually cause escalating prejudice to the counterdefendant and undue expansion of litigation that the court is charged with managing; for those reasons a new counterclaim should normally not be permitted if it exceeds the scope of the plaintiff's new claims. "As a general rule, the risk of substantial prejudice increases with the passage of time." 6 Wright & Miller, § 1488. Although "leave to amend 'shall be freely given,'" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Rule 15(a)), *Foman* qualifies that advice by adding "[i]n the absence of . . . undue prejudice," *id.*;[13] *see*

---

changes the theory or scope of the case," *id.*, but such counterclaims "must be those that respond to new allegations in the amended complaint," *id*. Finally, a so-called "*Bern* approach," *id.*, suggests that courts considering whether new counterclaims may be filed should "simply apply normal Rule 15(a) standards, in all their flexibility," *id.*; s*ee Bern Unlimited, Inc. v. Burton Corp.*, 25 F. Supp. 3d 170, 178-79 (D. Mass. 2014).

[13] *Cf. Telecom International America, Ltd. v. AT&T Corp.*, 280 F.3d 175, 200 (2d Cir. 2001) (stating broadly that a validly asserted counterclaim, presented within the normal time limits applicable to an amended answer, should not be rejected because of prejudice). However, the counterclaim at issue in that case, although filed in an amended answer to an amended complaint, was not a new counterclaim; it had been filed in the

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave [to amend] for good reason, including . . . undue prejudice to the opposing party."). And, as *Foman* points out, amended pleadings, which include new counterclaims, can also be rejected because of "undue delay, bad faith or dilatory motive." 371 U.S. at 182.

As to procedure for presenting a new counterclaim, most attempts to amend an answer to include a new counterclaim require permission of the court or consent of the parties. *See* Fed. R. Civ. P. 15(a)(2). The only exceptions occur when a counterclaimant seeks to amend its answer within 21 days after serving its original answer, *see* Fed. R. Civ. P. 15(a)(1)(A), or within 21 days after service upon it of (1) a required responsive pleading, *e.g.*, an answer to a counterclaim, or (2) a motion under Rule 12(b), (e), and (f), *see* Fed. R. Civ. P. 15(a)(1)(B). And attempts to amend an answer to include a new counterclaim after an amended complaint that requires a response has been filed must be made within 14 days after service of the amended complaint. *See* Fed. R. Civ. P. 15(a)(3).[14]

---

defendant's answer to the plaintiff's original complaint. *See Telecom International America, Ltd. v. AT&T Corp.*, 187 F.R.D. 492, 494 (S.D.N.Y. 1999).

[14] The apparent discrepancy between the 21-day interval of Rule 15(a)(1)(B) and the 14-day interval of Rule 15(a)(3) will not inevitably arise. Rule 15(a)(3) sets a 14-day limit only for a "required response to an amended pleading." Rule 15(a)(1)(B) sets a 21-day interval in which a party may amend its pleading "as of course," *i.e*, without the

The proper procedure to challenge a new counterclaim filed in response to an amended complaint depends on the procedure used by the counterclaimant. If the counterclaimant files a Rule 15 motion to amend its answer to include a new counterclaim, the counterdefendant can oppose that motion. But if a counterclaimant files an amended answer that includes a new counterclaim without seeking court permission under Rule 15(a)(2), thereby denying the counterdefendant an opportunity to oppose a counterclaimant's Rule 15 motion, the proper motion for the counterdefendant to use depends on what appears on the face of the pleadings or in the record.

In the analogous situation where a claim or counterclaim is alleged to be barred by a statute of limitations, the Eleventh Circuit has helpfully explained that "[w]hile a statute of limitations defense may be raised on a motion to dismiss for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6), *see Mann v. Adams Realty Co.*, 556 F.2d 288 (5th Cir. 1977), when the complaint shows on its face that the limitations period has run, *Mooney v. Tallant*, 397 F. Supp.

court's or the opponent's permission. Thus, the 14-day interval shortens the 21-day interval only where a defendant, responding as required to a plaintiff's amended complaint, elects to include in its amended answer a new counterclaim, because that new counterclaim is a pleading "to which a responsive pleading is required," Fed. R. Civ. P. 15(a)(1)(B), *i.e.*, the plaintiff/counterdefendant's answer.

680 (N.D. Ga. 1975), the defect may be raised by motion for summary judgment where the alleged failure to comply with the statute of limitations does not appear on the face of the complaint." *Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982); *see Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) (Rule 12(b)(6) motion proper where facts appear on face of pleading); *Chicago Building Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014) (same); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (same).

Similarly, if a new counterclaim raising issues beyond the scope of the most recent amended complaint is filed so late in the litigation that it will cause prejudice to the counterdefendant or unduly expand the litigation, the new counterclaim may be challenged (1) by a Rule 12(b)(6) motion if relevant undisputed facts appear on the face of the pleadings or in the record, (2) by a Rule 56 motion if relevant undisputed facts can be presented by affidavit, or (3) by an answer under Rule 8(c) if relevant facts are in dispute. Rule 12(f), which authorizes a motion to strike an insufficient defense or improper material *in* a pleading should not be used to dismiss the counterclaim. *See Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992); 2 Moore's Federal Practice § 12.37[3] (3d ed. 2018); 5C Wright & Miller, § 1380, at n.5 (3d ed. 2018).

In ruling on a motion to dismiss a new counterclaim, a district court can either assess the new counterclaim's legal sufficiency or exercise the discretion the court would have been entitled to use if the counterclaimant had moved under Rule 15 to file the new counterclaim.

In the pending case, GEOMC's use of a Rule 12(f) motion to strike Calmare's new counterclaims (as distinguished from striking matter in them) was procedurally improper. *See Day*, 955 F.2d at 811. But GEOMC should not be faulted for abiding by the District Court's novel ruling that permitted Calmare's amended answer, with the new counterclaims, to be filed, subject to GEOMC's filing a motion to strike the counterclaims. Although this procedure was improper, the District Court's ruling on GEOMC's motion to strike Calmare's new counterclaims was the functional equivalent of a ruling on Calmare's motion to amend its answer under Rule 15 to include the new counterclaims in an amended answer to GEOMC's second amended complaint. We will therefore consider the dismissal ruling on its substantive merits.

Because the second amended complaint, filed late in the litigation, added only a claim for breach of contract, the new counterclaims were properly tested in relation only to that claim. Calmare's new counterclaims endeavored to respond

to matters beyond the scope of that added claim. The first new counterclaim alleged that GEOMC breached a 2007 license by entering into an agreement with Radiant Health Management Corp. ("Radiant"), an entity not in the litigation up to that point. The second and sixth alleged that GEOMC tortiously interfered with the 2007 License by its interactions with Radiant. The fifth alleged that the previous allegations concerning Radiant constituted unfair competition in violation of the Lanham Act and state law. The third alleged that GEOMC should have known that Calmare's CEO lacked authority to execute the Security Agreement and that the Agreement was unenforceable.

The District Court rejected the four counterclaims concerning Radiant on the ground of prejudice, stating that these counterclaims would "greatly expand the relatively narrow scope of this case" and "substantially increase[e] the cost and time required to litigate this matter" by adding "contractual agreements and numerous third parties not named" in the lawsuit. *GEOMC*, 2016 WL 6122930, at *6. The Court rejected the third counterclaim because it "does not include any factual allegations that would support this claim, nor does it describe a legal basis for the damages sought." *Id.* at *5. Rejecting the counterclaims concerning Radiant was within the District Court's discretion because, at a late stage of the case, their

presentation would have prejudicially expanded the litigation, and the third counterclaim was properly rejected as factually and legally deficient.

## Conclusion

The ruling striking Calmare's two affirmative defenses and rejecting its five counterclaims is affirmed. The case is remanded for further proceedings consistent with a summary order filed this day.